T.C. Memo. 2006-151

UNITED STATES TAX COURT

GREGORY DRAKE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent<sup>*</sup>

Docket No. 20454-03L.          Filed July 24, 2006.

<u>Timothy J. Burke</u>, for petitioner.

<u>Louise R. Forbes</u>, for respondent.

SUPPLEMENTAL MEMORANDUM FINDINGS OF FACT AND OPINION

WELLS, <u>Judge</u>:  The instant case relates to the administrative hearing and determination of respondent's Appeals Office pursuant to section 6330 with respect to petitioner's

---

*This opinion supplements <u>Drake v. Commissioner</u>, 125 T.C. 201 (2005).

1991, 1992, 1994, 1995, and 1997 tax years.[1]  On October 12, 2005, we filed the initial opinion in this case, Drake v. Commissioner, 125 T.C. 201 (Drake I).  In Drake I, we concluded that a memorandum received by the settlement officer assigned to conduct petitioner's administrative hearing under section 6330 (section 6330 hearing) constituted a prohibited ex parte communication which may have damaged petitioner's credibility before respondent's Appeals Office.  Consequently, we held that respondent's Appeals officer abused his discretion in determining that the proposed levy against petitioner should be sustained. We retained jurisdiction of the case and remanded it to respondent's Appeals Office for a new section 6330 hearing with an independent Appeals officer who had received no communication relating to the credibility of petitioner or petitioner's representative.  On November 17, 2005, petitioner filed a motion for litigation costs and fees pursuant to section 7430 and Rule 231.  In accordance with an order of this Court, a newly assigned Appeals officer conducted a new section 6330 hearing with petitioner (the section 6330 hearing on remand).  On March 13, 2006, respondent's Appeals Office issued a notice of determination, sustaining the proposed collection action against

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

petitioner. On April 13, 2006, petitioner filed a "Motion to Compel Settlement".

The issues to be decided are (1) whether the ultimate determination of respondent's Appeals Office to sustain the proposed collection action is an abuse of discretion; (2) whether to grant or deny petitioner's "Motion to Compel Settlement"; and (3) whether petitioner is entitled to an award of costs and fees pursuant to section 7430.

## FINDINGS OF FACT

### I. General Background

Some of the underlying facts of this case are set forth in Drake I, and we incorporate by reference the portions of Drake I that are relevant to our disposition of the instant case.

Petitioner Gregory Drake and Barbara Drake are husband and wife. At the time of the filing of the petition, petitioner resided in South Yarmouth, Massachusetts.

### II. The 1997 Bankruptcy

As of August 19, 1997, respondent had filed Notices of Federal Tax Lien against petitioner for income tax liabilities for 1991, 1992, and 1995. On that date, Barbara Drake and petitioner filed a joint bankruptcy petition under chapter 13 of the Bankruptcy Code with the U.S. Bankruptcy Court for the District of Massachusetts. Thereafter, respondent filed a proof of claim with respect to the unpaid Federal income tax

liabilities of Barbara Drake and petitioner. During the 1997 bankruptcy proceeding, Barbara Drake and petitioner received authority to sell three properties which were subject to Federal tax liens. The sale yielded $161,250.65, and a Federal tax lien attached to the sale proceeds.

Subsequently, the bankruptcy trustee filed a motion to dismiss the case for failure to file a repayment plan, and Barbara Drake and petitioner filed a Motion for Authority to Disburse Funds. The bankruptcy court granted the motion to dismiss and issued an order mooting the Motion for Authority to Disburse Funds. Upon the dismissal of the case on June 30, 1999, Neal E. Satran (Mr. Satran), the attorney representing Barbara Drake and petitioner in the 1997 bankruptcy, distributed to Barbara Drake and petitioner sale proceeds in the amount of $151,139.74 (the 1997 bankruptcy sale proceeds).[2] Petitioner gratuitously transferred the 1997 bankruptcy sale proceeds to his sons, Darren Drake and Gregory Drake, who placed the proceeds in a joint personal brokerage account under their names.[3] At no

---

[2]This amount represents the $161,250.65 received from the bankruptcy sale, less attorney's fees and expenses.

[3]The parties stipulated as follows: "Petitioner gifted the proceeds, or $151,139.74, from [the 1997] bankruptcy proceeding to his sons, Darren Drake and Gregory Drake, Jr." We note, however, that the record otherwise suggests that petitioner gratuitously transferred only $150,000 of the proceeds to his sons. To the extent that the parties are unable to hereinafter reconcile this apparent contradiction, based on the

(continued...)

time were the 1997 bankruptcy sale proceeds commingled with other funds. On October 6, 1999, Notices of Federal Tax Lien were filed against Barbara Drake and petitioner with respect to their 1994, 1995, and 1997 tax years.

On January 10, 2000, respondent issued computer-generated notices of outstanding income tax liabilities to Barbara Drake and petitioner. On January 14, 2000, respondent received from Barbara Drake and petitioner a Form 433-A, Collection Information Statement for Individuals (collection information statement). On the collection information statement, no response was provided to the question of whether assets had recently been sold or otherwise transferred for less than their full value.

III. The Initial Section 6330 Hearing

On July 19, 2000, respondent mailed to Barbara Drake and petitioner a Final Notice, Notice of Intent to Levy and Notice of Your Right to a Hearing, with respect to their 1991, 1992, 1994, 1995, and 1997 tax years. The notice asserted an unpaid tax of $121,478.17 and penalties and interest of $88,607.27. Pursuant to a power of attorney, Timothy J. Burke (Mr. Burke) timely requested a section 6330 hearing on behalf of Barbara Drake and petitioner. Subsequently, on behalf of Barbara Drake, Mr. Burke submitted a Form 8857, requesting relief from joint and several

---

[3](...continued)
aforementioned stipulation, the Court finds that petitioner gratuitously transferred the entire $151,139.74 to his sons.

liability pursuant to section 6015 for each of the years in dispute. We discuss Barbara Drake's request for section 6015 relief in greater detail below.

A. Proceedings Before Settlement Officer O'Shea

Settlement Officer Eugene O'Shea was assigned to conduct the requested section 6330 hearing, and he determined from Internal Revenue Service (IRS) records that petitioner had previously filed for bankruptcy protection. On January 30, 2002, prior to the section 6330 hearing, Settlement Officer O'Shea conferred with Advisor Sid Gordon of the Internal Revenue Service Insolvency Unit (Advisor Gordon) regarding the 1997 bankruptcy and requested related documentation. On the same date, Advisor Gordon faxed to Settlement Officer O'Shea a copy of Advisor Gordon's prior memorandum to respondent's counsel Louise R. Forbes (Attorney Forbes). In the memorandum, dated October 5, 1999, Advisor Gordon stated that the 1997 bankruptcy sale proceeds had been distributed to Barbara Drake and petitioner, that the proceeds should have been distributed to the creditors of Barbara Drake and petitioner, and that Advisor Gordon believed that Mr. Satran and petitioner had "used the Court to bypass the Federal tax Lien." The memorandum further stated:

> According to the settlement sheets the debtor received $161,094.73 from the three sales. Although the Bankruptcy Court approved the sales under 11 USC 363 the IRS received nothing. Attorney Satran had knowledge of the Internal Revenue Service Federal Tax Liens due to the considerable litigation involved in

this case. In fact Attorney Satran filed a motion with the Court to disburse the funds including [sic] the IRS liens. It is a mockery to the integrity [of the] Bankruptcy Court if an Attorney can use it to defeat a Federal Tax Lien allowing a Debtor to walk away with the proceeds. The Bankruptcy Code was used because 11 USC 363 was authorized by the Court.

I informed Attorney Campobasso that Attorney Satran had previously been suspended by the Bankruptcy Court. Chief, US Bankruptcy Court Judge Carol J Keener suspended attorney Satran from 01/30/1996 through 11/29/1996. The action of Attorney Satran in a chapter 11 case [involving] Paula Wyner, Carlton House of Brockton, Inc. was the cause of the suspension. I think the Court should be informed of the conduct of Attorney Satran in this case.

On January 30, 2002, Mr. Burke attended a meeting with Settlement Officer O'Shea on behalf of both Barbara Drake and petitioner. At the meeting, Settlement Officer O'Shea did not inform Mr. Burke of his communications with Advisor Gordon. Mr. Burke provided a copy of a collection information statement signed by petitioner on January 24, 2002.[4] On the collection information statement, petitioner stated that he had not transferred any assets out of his name for less than their actual value in the last 10 years. A Form 656, Offer-in-Compromise (offer-in-compromise form), had been completed but was not submitted to Settlement Officer O'Shea for consideration. Petitioner concedes that the parties informally suspended consideration of any offer-in-compromise pending a determination

---

[4]Barbara Drake was not listed as a taxpayer and did not sign the form.

of Barbara Drake's request for section 6015 relief, which would influence whether petitioner filed an individual offer-in-compromise or a joint offer-in-compromise.

On September 4, 2002, petitioner submitted to respondent's Appeals Office an "amended" offer-in-compromise form. The amended offer-in-compromise listed petitioner alone as the taxpayer and offered to pay $5,500 in satisfaction of petitioner's tax liabilities for 1991, 1992, 1993, 1994, 1995, 1997, and 1999. In a letter to Mr. Burke dated September 4, 2002, Settlement Officer O'Shea acknowledged receiving the amended offer-in-compromise but noted that consideration of the original offer-in-compromise had been informally suspended by the parties pending the determination of Barbara Drake's request for section 6015 relief. Accordingly, Settlement Officer O'Shea informed Mr. Burke that no original offer-in-compromise had been submitted for consideration and returned the amended offer-in-compromise to Mr. Burke. Petitioner concedes that the reason for returning the amended offer-in-compromise form was to avoid any administrative confusion.

B.   Proceedings Before Appeals Officer Kaplan

On January 17, 2003, the section 6330 matter was transferred from Settlement Officer O'Shea to Appeals Officer Jeffrey Kaplan, who had been assigned to the administrative appeal of Barbara Drake's request for section 6015 relief. Appeals Officer Kaplan

subsequently advised Mr. Burke that no offer-in-compromise was presently before the Appeals Office, as no original offer-in-compromise had been submitted for consideration and the amended offer-in-compromise had been returned to Mr. Burke. Appeals Officer Kaplan informed Mr. Burke that any offer-in-compromise should be larger than the $5,500 amended offer-in-compromise submitted on September 4, 2002. Appeals Officer Kaplan also noted that the former residence of Barbara Drake and petitioner was now owned by their son and that the transfer appeared questionable.

In a conversation on June 16, 2003, Mr. Burke informed Appeals Officer Kaplan that Darren Drake, the son of Barbara Drake and petitioner, had foreclosed upon and bought petitioner's house. Appeals Officer Kaplan requested documentation related to the foreclosure and transfer.

In a letter dated July 2, 2003, Appeals Officer Kaplan made the following request, reproduced verbatim, for the production of documents:

1. Documentation regarding what was done with the funds received by the taxpayers from the sale of property as part of their bankruptcy proceedings, along with how much was actually received.

2. Documentation of the value of the property located at 40 Keel Cape Drive, South Yarmouth, MA, prior to the foreclosure.

3. Documentation of the foreclosure.

4.   Documentation regarding the amount owed on the mortgage by the taxpayers at the time of the foreclosure.

5.   Documentation regarding the entity that acquired the mortgage from the prior mortgage holder prior to the foreclosure.

6.   Copies of the mortgage.

7.   Documentation of the acquisition of the property by Darren Drake.

8.   An updated Collection Information Statement for Mr. and Mrs. Drake.

9.   Completed Offer-in-Compromise Questionnaire.

10.  An updated Collection Information Statement for their businesses.

Appeals Officer Kaplan informed Mr. Burke that he would make a determination pursuant to section 6330 (section 6330 determination) based on information already within his possession unless Mr. Burke submitted the requested documents by July 30, 2003.  In addition, Appeals Officer Kaplan informed Mr. Burke that any offer-in-compromise should also be submitted.  In August of 2003, Mr. Burke provided respondent's Appeals Office with a portion of the requested documents but did not submit documentation related to the 1997 bankruptcy sale proceeds.  On August 26, 2003, Appeals Officer Kaplan informed Mr. Burke that he had not received all of the requested information.  Again, on September 16, 2003, Appeals Officer Kaplan verbally reminded Mr. Burke that all of the requested information had not been received by respondent.

On September 30, 2003, Barbara Drake filed a bankruptcy petition under chapter 13 of the Bankruptcy Code with the U.S. Bankruptcy Court for the District of Massachusetts.[5]  We discuss the 2003 bankruptcy in greater detail below.  In October of 2003, Mr. Burke advised Appeals Officer Kaplan that Barbara Drake had filed a bankruptcy petition under chapter 13 of the Bankruptcy Code, that the automatic stay of 11 U.S.C. sec. 362 (2000) applied to petitioner as well as Barbara Drake, and that 11 U.S.C. sec. 1301 precluded any collection action against either Barbara Drake or petitioner.  On October 27, 2003, Appeals Officer Kaplan requested legal advice from Attorney Forbes concerning the preclusion of any collection action against petitioner.  Attorney Forbes advised that 11 U.S.C. sec. 1301 did not preclude the collection action against petitioner.  Consequently, on October 27, 2003, Appeals Officer Kaplan advised Mr. Burke that the collection action could and would proceed against petitioner.  Additionally, Appeals Officer Kaplan advised Mr. Burke that information previously requested had not been received by the Appeals Office and that the Appeals Office would

_____

[5]The 2003 bankruptcy petition filed by Barbara Drake should not be confused with the earlier joint bankruptcy petition filed by Barbara Drake and petitioner and dismissed on June 30, 1999, for failure to file a repayment plan.  The latter bankruptcy petition is described above with respect to the 1997 bankruptcy. We note that Barbara Drake subsequently converted the 2003 bankruptcy from ch. 13 to ch. 7.  In re Drake, 336 Bankr. 155, 156 (Bankr. D. Mass. 2006).

close the case and issue a determination based on information already in its possession unless Mr. Burke submitted the information immediately. Appeals Officer Kaplan did not receive the requested information and closed the case file on October 29, 2003.

C.  The Original Notice of Determination

On November 10, 2003, respondent's Appeals Office issued petitioner a section 6330 determination (the original notice of determination), determining that all statutory administrative and procedural requirements had been met and that available information did not establish that an offer-in-compromise was a viable collection alternative. The original notice of determination did not purport to make a determination with respect to Barbara Drake. Petitioner timely petitioned this Court for judicial review of the original notice of determination. Both the petition and a subsequently filed amended petition named Gregory Drake, alone, as the petitioner, and Mr. Burke signed both documents on behalf of only Gregory Drake. Neither the petition nor the amended petition purported to be filed on behalf of Barbara Drake.

IV. Drake I

As discussed above, in Drake I, we held that the communication between Advisor Gordon and Settlement Officer O'Shea on January 30, 2002, constituted a prohibited ex parte

communication pursuant to Rev. Proc. 2000-43, 2000-2 C.B. 404, which may have damaged petitioner's credibility before Settlement Officer O'Shea and Appeals Officer Kaplan. Accordingly, we held that Appeals Officer Kaplan abused his discretion in sustaining the proposed collection action. We retained jurisdiction of the case and remanded it to respondent's Appeals Office for a new section 6330 hearing with an independent Appeals officer who had received no communication relating to the credibility of petitioner or petitioner's representative. Because we remanded the case for a new hearing, we did not address petitioner's remaining contentions, which are discussed below.

V.   Petitioner's Motion for Litigation Costs

On November 17, 2005, petitioner filed a motion for litigation costs and fees pursuant to section 7430 and Rule 231. With the motion, petitioner submitted the affidavit of Mr. Burke, the affidavit of Mr. Burke's associate Melissa Halbig, and related billing records. On December 22, 2005, respondent filed a response to petitioner's motion for litigation costs and fees.

VI.  Barbara Drake's Request for Section 6015 Relief

On August 30, 2000, respondent received Barbara Drake's aforementioned request for section 6015 relief. Respondent denied Barbara Drake's request for section 6015 relief on February 5, 2002, and she appealed the determination to respondent's Appeals Office. The Appeals Office assigned to the

case Appeals Officer Kaplan, who was subsequently assigned to the section 6330 hearing of Barbara Drake and petitioner. On January 29, 2004, respondent's Appeals Office sent Barbara Drake a Final Notice of Determination Concerning Your Request for Relief from Joint and Several Liability under Section 6015 (the section 6015 determination), denying the requested relief. Barbara Drake subsequently filed with this Court a Petition for Relief from Joint and Several Liability (the section 6015 petition), challenging the section 6015 determination. Drake v. Commissioner, 123 T.C. 320, 321-322 (2004).

At the time that Barbara Drake filed the section 6015 petition, the 2003 bankruptcy had been neither closed nor dismissed. Id. at 322. Furthermore, the bankruptcy court had neither granted nor denied Barbara Drake a discharge. Id. Consequently, we granted respondent's motion to dismiss Barbara Drake's section 6015 case on the ground that she filed the section 6015 petition in violation of the automatic stay imposed under 11 U.S.C. sec. 362(a)(8)(2000). Id. at 325.

VII. The 2003 Bankruptcy

The aforementioned 2003 bankruptcy commenced with the filing of Barbara Drake's chapter 13 petition on September 30, 2003. See 11 U.S.C. sec. 301(a)(2000). Schedule D of Barbara Drake's bankruptcy petition listed, inter alia, a secured lien of the

Internal Revenue Service (IRS) in the amount of $270,295.76.  In re Drake, 336 Bankr. 155, 156 (Bankr. D. Mass. 2006).  In November of 2003, the IRS filed a proof of claim with the bankruptcy court.  Id.  Barbara Drake filed an objection, contending that she was entitled to section 6015 relief with respect to the years listed in the proof of claim.  Id.  In December of 2004, Barbara Drake was discharged from bankruptcy. Id.  Subsequently, Barbara Drake filed with the bankruptcy court a "Motion to Request the Determination of a Tax Liability".[6]  Id. The IRS moved to dismiss Barbara Drake's motion.  Id.

The bankruptcy court held sua sponte that respondent's Appeals Office had issued the section 6015 determination in violation of the automatic stay of 11 U.S.C. sec. 362(a)(1).[7] Id. at 159.  Because Barbara Drake had been discharged from bankruptcy subsequent to the issuance of the section 6015 determination, however, the bankruptcy court concluded that the automatic stay no longer bars administrative action under section

---

[6]Barbara Drake filed the aforementioned motion soon after the Tax Court dismissed her sec. 6015 case for lack of jurisdiction in Drake v. Commissioner, 123 T.C. 320 (2004).

[7]Although we held in Drake v. Commissioner, 123 T.C. at 325, that Barbara Drake filed the sec. 6015 petition in violation of the automatic stay imposed under 11 U.S.C. sec. 362(a)(8)(2000), we did not address explicitly whether the sec. 6015 determination also violated the automatic stay.

6015.[8]  Id. at 160.  Consequently, rather than deciding Barbara Drake's section 6015 request, the bankruptcy court decided that the "interests of justice are better served by allowing * * * [Barbara Drake's] appeal to proceed at the IRS."  Id.  On May 16, 2006, the bankruptcy court denied a motion for reconsideration filed by the United States.  On May 30, 2006, the United States filed a Notice of Appeal to the U.S. District Court for the District of Massachusetts.

## VIII. The Section 6330 Hearing on Remand

On October 17, 2005, in accordance with our holding in Drake I, we ordered respondent to offer petitioner a new section 6330 hearing with an independent Appeals officer on a date no later than November 10, 2005.  In addition, we ordered the parties to each file with the Court a status report no later than January 6, 2006.

### A.  Proceedings Before Appeals Officer Kramer

On behalf of petitioner, Mr. Burke met with Appeals Officer Linda Kramer at the IRS Appeals Office in Boston, Massachusetts, on November 4, 2005.  Appeals Officer Kramer had no prior involvement with petitioner and had received no communication relating to the credibility of petitioner or petitioner's

---

[8]In addition, the bankruptcy court noted that there were no assets to be administered and the property subject to the IRS lien was no longer the property of the bankruptcy estate.  In re Drake, 336 Bankr. at 160.

representative.[9]  At the conclusion of the aforementioned

conference, respondent's Associate Area Counsel John V. Cardone

(Attorney Cardone) met with Mr. Burke and Appeals Officer Kramer

to discuss the possibility of an offer-in-compromise.[10]  On

behalf of petitioner, Mr. Burke submitted another collection

information statement, and he agreed to submit a new offer-in-

compromise by November 14, 2005.  Petitioner was asked to submit

certain documents by November 14, 2005, to verify petitioner's

collection information statement.  Attorney Cardone informed Mr.

Burke that any offer-in-compromise should include the 1997

bankruptcy sale proceeds.

Mr. Burke subsequently submitted on petitioner's behalf an

offer-in-compromise in the amount of $75,000, representing

approximately one-half of the 1997 bankruptcy sale proceeds.  The

offer-in-compromise was based on doubt as to collectibility and

the promotion of effective tax administration.  On January 19,

2006, respondent accepted the offer-in-compromise for processing.

---

[9]On Mar. 31, 2006, we ordered petitioner to file a response,
setting forth clear and concise assignment of each and every
error which petitioner alleges to have been committed with
respect to the supplemental notice of determination.  Petitioner
made no contention that Appeals Office Kramer either had a prior
involvement with petitioner or had received a communication
relating to the credibility of petitioner or petitioner's
representative.  Consequently, those issues are deemed to be
conceded by petitioner.  See Rule 331(b)(4).

[10]Pursuant to sec. 7122(b), any offer-in-compromise
exceeding $50,000 requires the opinion of the General Counsel for
the Department of the Treasury or his delegate.

B.    The Jeopardy Levy

On November 22, 2005, respondent levied upon the 1997 bankruptcy sale proceeds, and named Darren Drake and Gregory Drake, Jr., as "nominees and/or transferees".  Respondent notified petitioner of the jeopardy levy in a letter dated November 28, 2005.  In the letter, respondent made the following contentions in support of the jeopardy levy:

> (1) You did not answer a question about the transfer of funds to your sons on the first financial statement that you submitted during the CDP process.  On a subsequent financial statement you falsely answered the question regarding a transfer of assets.
>
> (2) You did not tell the Appeals Officer where the funds were when requested to do so during the CDP process.
>
> (3) The funds were in the name of third parties and can easily be dissipated.
>
> (4) Even after we informed your representative that the government was now fully aware of the facts involving the money in the account, you submitted an offer in compromise that your representative knew in advance would be unacceptable.

On April 13, 2006, petitioner filed with the Court a "Motion for Stay of Levy", requesting that the Court order a stay of the jeopardy levy on grounds that respondent made the jeopardy levy in bad faith, for the purpose of advancing respondent's negotiating position in settlement discussions.

C.    The Global Settlement Negotiations

During the section 6330 hearing on remand, the parties engaged in negotiations to resolve the tax liabilities of both

Barbara Drake and petitioner for the years in issue (the global settlement).[11]  The parties first discussed such a global settlement in a telephone conference on December 16, 2005.

In a letter to Attorney Cardone dated December 19, 2005, Mr. Burke stated:  "It is my understanding that the Service has offered to resolve both Mr. Drake's and Mrs. Drake's matters in exchange for the Drake family's foregoing all claims relative to the levy which has been made upon funds held by the Mr. and Mrs. Drake's son(s)."  In response to an apparent request by respondent that petitioner drop his motion for litigation costs and fees, Mr. Burke's letter further stated that the award of litigation costs and fees is "a matter for the consideration by the Court and not a matter for negotiation."

In a letter to Mr. Burke dated December 20, 2005, Attorney Cardone stated that respondent would agree to take no further collection action against Barbara Drake and petitioner with respect to the years in issue upon the following terms:

- Darren Drake and Gregory Drake, Jr., waive all rights to bring a claim against the United States under 26 U.S.C. sec. 7426(a).

- Darren Drake and Gregory Drake, Jr., will provide whatever consents are necessary to allow Citigroup Smith Barney to liquidate the brokerage account that was the subject of the IRS levy and to turn the proceeds over to the IRS.  Normal costs and

---

[11]The parties' global settlement negotiations should be distinguished from petitioner's offer-in-compromise, which pertains to the tax liabilities of petitioner alone.

commissions would be charged against the proceeds.

- Barbara Drake would be granted innocent spouse relief for the outstanding balance of the Subject Liabilities, after application of the Smith Barney proceeds. Barbara Drake waives any right she may have to file a refund claim for the Subject Liabilities.

- The IRS would accept the Smith Barney proceeds as an Offer in Compromise from Gregory Drake for satisfaction of the Subject Liabilities.

- Gregory Drake agrees to a motion to dismiss the above-referenced CDP case as moot, with no costs or attorneys fees awarded to either party.

- Gregory Drake, Darren Drake, and Gregory Drake, Jr., reserve whatever rights they may have to file amended income tax returns with respect to this matter.

The aforementioned terms are sometimes hereinafter generally referred to as the settlement terms. In a letter to Mr. Burke dated December 21, 2005, Attorney Cardone stated that the Appeals officer would be instructed that the parties were unable to reach a settlement unless Barbara Drake and petitioner were to accept all of the settlement terms as of December 28, 2005. Accordingly, in a letter dated December 30, 2005, Attorney Cardone informed Mr. Burke that the settlement terms had not been accepted and that the offer had, therefore, lapsed.

Despite Attorney Cardone's letter stating that respondent's offer had lapsed, Mr. Burke and Attorney Cardone again discussed the prospective global settlement in a telephone conference on January 6, 2006. During this conference, Mr. Burke informed

Attorney Cardone that Barbara Drake and petitioner accepted the settlement terms. In a letter to Mr. Burke on that date, Attorney Cardone stated as follows:

> Dear Attorney Burke:
>
> Pursuant to our conversation of this date, we are enclosing the original and two copies of a Decision document in the [instant] case. The original and one copy should be signed, dated, and returned to this office for filing with the Tax Court. The third copy is for your records.
>
> We are enclosing a release for Gregory Drake Jr. and Darren Drake. Please review the document. The release should be signed and dated and returned to this office.
>
> We are also enclosing facsimile memorandums from Gregory Drake, Jr. and Darren Drake to Smith Barney. Gregory Drake, Jr. and Darren Drake need to execute the appropriate memorandum and fax to Smith Barney.

With the letter, Mr. Cardone sent the following documents to Mr. Burke: (1) A proposed stipulated decision with respect to the instant case (the proposed stipulated decision); (2) a waiver of any claims of Darren Drake and Gregory Drake, Jr., against the United States pursuant to section 7426(a) (the proposed waiver); and (3) a memorandum from each of Darren Drake and Gregory Drake, Jr., authorizing Citigroup to liquidate by sale all assets in their joint brokerage account containing the 1997 bankruptcy sale proceeds. Both the proposed stipulated decision and the proposed waiver referenced the settlement terms.[12] None of the

---

[12]The proposed stipulated decision stated, inter alia, that
(continued...)

aforementioned documents, however, were at any time signed by Mr. Burke, Barbara Drake, Darren Drake, Gregory Drake, Jr., or petitioner.

Petitioner and respondent each referenced the global settlement negotiations in the status reports that we ordered to be filed with this Court by January 6, 2006. Petitioner's status report stated that "counsel have undertaken extensive negotiations to resolve the subject matter and believe that they have achieved a basis for settlement." Respondent's status report stated that the "parties have engaged in settlement negotiations in an attempt to resolve petitioner's outstanding income tax liabilities. As of this date, the parties have not resolved the outstanding income tax liabilities but negotiations are on going."

In a letter to Mr. Burke dated January 13, 2006, Attorney Forbes stated as follows: "As of this date, the terms of the settlement have not been accepted by your client and related parties. * * * We are hereby withdrawing the proposed January 6, 2006 settlement unless Barbara Drake agrees to the vacatur of

---

[12](...continued)
"petitioner and respondent will resolve the liabilities that are the subject of this action in accordance with the terms of the December 20, 2005, letter from respondent to petitioner's counsel, Timothy J. Burke." The proposed waiver stated, inter alia, as follows: "In accordance with the December 20, 2005 letter from [Attorney Cardone to Mr. Burke] and pursuant to their agreement with the terms of that letter, Gregory Drake, Jr., and Darren Drake, hereby waive any and all claims * * *."

the January 11, 2006 Memorandum Decision and January 12, 2006 Order of the Bankruptcy Court."

In a letter to Appeals Officer Kramer dated January 28, 2006, Mr. Burke stated, inter alia, (1) that he believed that the section 6330 hearing on remand included Barbara Drake as a consequence of the bankruptcy court's decision in In re Drake, 336 Bankr. at 156; (2) that all parties to the matter agreed to the settlement terms; and (3) that the "taxpayers" were amending their offer-in-compromise to reflect the settlement terms, with the exception of the proposed waiver of petitioner's claim for litigation costs and fees.

On April 13, 2006, petitioner filed a "Motion to Compel Settlement", contending that Mr. Burke accepted a settlement offer from respondent on January 6, 2006, and requesting that the Court enforce such settlement.

D.    The Supplemental Notice of Determination

On March 13, 2006, respondent's Appeals Office issued to petitioner a notice of determination (the supplemental notice of determination), setting forth the following determination:

> The proposed collection action is sustained.  You did
> not provide sufficient information for the evaluation
> of your proposed collection alternative.  Consequently,
> your Offer could not be evaluated and is being
> rejected.  The jeopardy levy is sustained.  The
> attachment to this Determination Letter contains
> additional details.

In the aforementioned attachment to the supplemental notice of

determination, respondent's Appeals Office stated, inter alia, that (1) the parties had been unable to settle the instant case; (2) that petitioner was precluded from challenging the underlying liability for his 1995 tax year because he had the opportunity to dispute the liability during the 1997 bankruptcy proceeding; (3) that Barbara Drake is not a party to the instant case because she was not a party to the petition filed with the Tax Court pursuant to section 6330(d) and Rule 331(a); (4) that the jeopardy levy was appropriate because petitioner appeared to be designing to quickly place his property beyond the reach of the Government and because petitioner's financial solvency appears to be imperiled; and (5) that petitioner's offer-in-compromise is rejected on the ground that petitioner failed to submit requested financial verification documents necessary to evaluate the offer.  On April 13, 2006, petitioner filed a response to the supplemental notice of determination.

OPINION

## I.  <u>Sections 6330 and 6331</u>

If any person liable to pay any tax neglects or refuses to pay such tax within 10 days after notice and demand for payment, section 6331(a) authorizes the Secretary to collect such tax by levy upon property belonging to the person.  Notwithstanding section 6331(a), section 6330(a) provides that no levy may be made unless the Secretary first notifies the person in writing of

the right to a hearing before an impartial officer of respondent's Appeals Office.[13]

At the section 6330 hearing, the Appeals officer must verify that the requirements of any applicable law or administrative procedure have been met. Sec. 6330(c)(1). The person may raise any relevant issue relating to the unpaid tax or the proposed levy, including appropriate spousal defenses, challenges to the appropriateness of collection actions, and offers of collection alternatives such as an offer-in-compromise. Sec. 6330(c)(2)(A). The person may challenge the existence or amount of the underlying tax liability, however, only if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability. Sec. 6330(c)(2)(B).

At the conclusion of the hearing, the Appeals officer must determine whether and how to proceed with collection. See sec. 6330(c)(3). In making that determination, the Appeals officer must take the following into consideration: (1) Verification that the requirements of any applicable law or administrative procedure have been met; (2) relevant issues raised by the taxpayer; (3) appropriate challenges to the underlying tax

---

[13]Such prior notification under sec. 6330(a), however, is not required where the Secretary finds that the collection of the tax is in jeopardy. Secs. 6331(a), 6330(f). We discuss that exception in greater detail below.

liability by the taxpayer; and (4) whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the taxpayer that the collection action be no more intrusive than necessary. Sec. 6330(c)(3).

Section 6330(d)(1) provides this Court with jurisdiction to review a section 6330 determination if we have jurisdiction over the underlying tax. Where the underlying tax liability is properly in issue, we review the determination de novo. Freije v. Commissioner, 125 T.C. 14, 23 (2005). Where the underlying tax is not in issue, we review the determination for abuse of discretion. Id.

II. The Hearing on Remand

In exercising judicial review of a section 6330 determination, the Court may under certain circumstances remand a case to respondent's Appeals Office while retaining jurisdiction. See Lunsford v. Commissioner, 117 T.C. 183, 189 (2001); Parker v. Commissioner, T.C. Memo. 2004-226; Harrell v. Commissioner, T.C. Memo. 2003-271. The resulting section 6330 hearing on remand provides the parties with the opportunity to complete the initial section 6330 hearing while preserving the taxpayer's right to receive judicial review of the ultimate administrative determination. The section 6330 hearing on remand supplements the initial section 6330 hearing, and the initial hearing and the

hearing on remand together constitute the taxpayer's administrative hearing for purposes of section 6330.[14]  See Parker v. Commissioner, supra ("In appropriate circumstances, we may remand a case to the Appeals Office for further investigation and consideration of the taxpayer's contentions.").  In the instant case, respondent's notice of determination, dated March 13, 2006, is properly treated as a supplemental notice of determination.  Petitioner continues to dispute the issues raised in the original notice of determination and has raised additional issues with respect to the supplemental notice of determination. As petitioner previously had filed a petition under section 6330 with this Court, the determinations of respondent's Appeals Office are ripe for judicial review.  Sec. 6330(d)(1).  We separately address below the issues raised by petitioner with respect to the original notice of determination and the supplemental notice of determination.

III. Issues With Respect to the Initial Section 6330 Hearing

We now address the issues that were raised by petitioner with respect to the initial hearing but not addressed in Drake I.[15]

---

[14]We note that a person is entitled to only one notification pursuant to sec. 6330(a)(1) and one administrative hearing pursuant to sec. 6330(b)(2).

[15]Because we held in Drake I that the ex parte communication between Advisor Gordon and Settlement Officer O'Shea on Jan. 30,
(continued...)

A.   Whether the Initial Section 6330 Hearing Was Conducted in

    Good Faith.

In response to the original notice of determination, petitioner contended that Settlement Officer O'Shea and Appeals Officer Kaplan were biased, were not impartial, and did not conduct the administrative review in good faith.[16]  Since the completion of the initial hearing, however, petitioner participated in the hearing on remand with Appeals Officer Kramer, who had no prior involvement with petitioner and had received no communication relating to the credibility of petitioner or petitioner's representative.  In light of the hearing on remand, we are satisfied that petitioner received a

---

[15](...continued)
2002, constituted a prohibited ex parte communication, we did not decide petitioner's remaining contentions in that opinion.

[16]Although the aforementioned contentions appear redundant, petitioner's briefs set forth separate arguments with respect to each.  Petitioner alleged the following facts in support of his contentions:  (1) Settlement Officer O'Shea and Advisor Gordon engaged in an ex parte communication on Jan. 30, 2002; (2) Appeals Officer Kaplan and Attorney Forbes engaged in an ex parte communication on Oct. 27, 2003; (3) Appeals Officer Kaplan requested that petitioner submit updated financial documentation without investigating financial statements previously submitted by petitioner; (4) Appeals Officer Kaplan simultaneously requested that petitioner submit financial information and that petitioner increase his offer-in-compromise; (5) Appeals Officer Kaplan determined that the transfer of petitioner's home to Darren Drake appeared questionable even though Appeals Officer Kaplan had no experience and performed no research with respect to bankruptcy foreclosure issues; and (6) respondent's Appeals Office authorized Settlement Officer O'Shea and Appeals Officer Kaplan to both conduct the sec. 6330 hearing and to negotiate an offer-in-compromise.

section 6330 hearing before an impartial Appeals officer for purposes of section 6330(b)(3), and we conclude that petitioner's aforementioned contentions are now moot. See Sapp v. Commissioner, T.C. Memo. 2006-104.

B. Whether Petitioner's Fifth Amendment Right to Due Process Was Violated.

Petitioner also contends that his Fifth Amendment right to due process was violated by the absence of "recognizable" procedures to be followed in the section 6330 hearing. The Secretary, however, has promulgated regulations to govern section 6330 hearings, see sec. 301.6330-1, Proced. & Admin. Regs., and respondent's Internal Revenue Manual sets forth related administrative procedures in detail, 4 Administration, Internal Revenue Manual (CCH), sec. 8.7.2.3. to 8.7.2.3.14. Petitioner fails to specify how such regulations and procedures are inadequate or even to acknowledge their existence. Under the circumstances of the instant case, we conclude that petitioner's Fifth Amendment right to due process was not violated. See Rule 142(a).

C. Whether Petitioner Submitted a Viable Offer-in-Compromise.

We understand petitioner to contend further that he submitted a viable collection alternative for consideration and that Settlement Officer O'Shea and Appeals Officer Kaplan did not balance the need for the efficient collection of taxes with

petitioner's legitimate concern that the collection action be no more intrusive than necessary.

The record does not support petitioner's contention. Although petitioner completed an offer-in-compromise form, Mr. Burke did not submit the form to Settlement Officer O'Shea for consideration during their meeting on January 30, 2002, or at any time thereafter. Petitioner concedes that the parties informally suspended consideration of any offer-in-compromise pending a determination of Barbara Drake's request for section 6015 relief. On September 4, 2002, subsequent to respondent's denial of section 6015 relief to Barbara Drake, petitioner submitted an "amended" offer-in-compromise. In a letter dated September 4, 2002, Settlement Officer O'Shea informed Mr. Burke that no original offer-in-compromise had been submitted for consideration, and he returned the amended offer-in-compromise to Mr. Burke. Petitioner concedes that the reason for returning the amended offer-in-compromise was to avoid any administrative confusion. On April 10, 2003, Appeals Officer Kaplan informed Mr. Burke that no offer-in-compromise was presently before the Appeals Office. A letter from Appeals Officer Kaplan to Mr. Burke dated July 2, 2003, stated as follows:

> I have enclosed several collection information statements and the Offer in Compromise Questionnaire. If the taxpayers' intent is to submit an Offer in Compromise as an alternative collection resolution to their case, please submit this document at this time. I have included the Offer in Compromise packet in this

envelope.

On September 16, 2003, Appeals Officer Kaplan verbally reminded Attorney Burke that he had not received the information requested on July 2, 2003. Finally, on October 27, 2003, Appeals Officer Kaplan informed Mr. Burke that information previously requested had not been received and that the Appeals Office would issue a determination based on information already in its possession unless Mr. Burke submitted the information immediately.

The record clearly demonstrates not only that petitioner failed to submit a viable offer-in-compromise for the consideration of respondent's Appeals officer, but that Settlement Officer O'Shea and Appeals Officer Kaplan repeatedly provided petitioner with the opportunity to submit an offer-in-compromise for consideration. Based on the administrative record, we hold that Settlement Officer O'Shea and Appeals Officer Kaplan balanced the need for the efficient collection of taxes with concern that the collection action be no more intrusive than necessary.

IV. <u>Issues With Respect to the Supplemental Notice of Determination</u>

We now address the issues raised by petitioner with respect to the supplemental notice of determination.

A.   Whether Barbara Drake Is Properly Included in Petitioner's Section 6330 Hearing.

Petitioner contends that the issues raised by Barbara Drake and by petitioner are "inextricably intertwined" and that respondent's Appeals Officer erred in determining that Barbara Drake was not properly included in petitioner's section 6330 hearing on remand.

For this Court to have jurisdiction of a taxpayer's section 6330 action, the person must be issued a notice of determination under section 6330 by respondent's Appeals Office, and the person must timely file a petition with this Court for judicial review of the section 6330 determination.  Sec. 6330(c) and (d); Rules 330 and 331.  In the instant case, although Mr. Burke submitted a request for a section 6330 hearing on behalf of both Barbara Drake and petitioner, respondent's Appeals Office issued the original notice of determination to petitioner alone.  Subsequently, Mr. Burke filed a section 6330 petition with this Court on behalf of petitioner alone.  As noted above, neither the petition nor the amended petition purported to be filed on behalf of Barbara Drake.  Consequently, Barbara Drake is not a party to the instant case, and this Court has no jurisdiction over the issue of whether she was entitled to participate in the section

6330 hearing on remand.[17]

B.  <u>Whether Petitioner May Challenge the Underlying Liability</u>

<u>for 1995.</u>

Petitioner contends that respondent's Appeals officer erred in determining that petitioner may not challenge the underlying liability for petitioner's 1995 tax year.

As noted above, in a section 6330 hearing, a taxpayer may challenge the existence or amount of the underlying tax liability only if the taxpayer did not receive a statutory notice of deficiency for the tax liability or did not otherwise have an opportunity to dispute the tax liability.  Sec. 6330(c)(2)(B). In the instant case, the record demonstrates that petitioner had the opportunity to dispute the 1995 tax liability during petitioner's 1997 bankruptcy proceeding.  See <u>Kendricks v. Commissioner</u>, 124 T.C. 69, 77 (2005).  Consequently, we conclude that petitioner may not challenge the underlying 1995 Federal income tax liability in the instant case.  See <u>id.</u>

C.  <u>Whether the Jeopardy Levy Was Proper.</u>

Petitioner contends that respondent imposed the jeopardy

---

[17]Barbara Drake does not appear to have been issued a notice of determination under sec. 6330 with respect to the taxable years in issue.  While respondent's Appeals Office may issue a sec. 6330 determination to Barbara Drake upon the resolution of her sec. 6015 matter, unless such a determination is issued and a petition is timely filed with this Court by her, we lack jurisdiction with respect to Barbara Drake's collection proceedings.

levy in bad faith as a means of advancing respondent's negotiating position in settlement discussions and that respondent's Appeals officer erred in sustaining the jeopardy levy.

If the Secretary believes that the assessment or collection of a tax deficiency will be jeopardized by delay, he shall immediately assess the deficiency and issue notice and demand for payment to the person liable for the payment of the tax.[18]  Sec. 6861(a).  The existence of one or more of the following conditions supports a determination that the collection of a tax is in jeopardy:

(i) The taxpayer is or appears to be designing quickly to depart from the United States or to conceal himself or herself.

(ii) The taxpayer is or appears to be designing to quickly place his, her, or its property beyond the reach of the Government either by removing it from the United States, by concealing it, by dissipating it, or by transferring it to other persons.

(iii) The taxpayer's financial solvency is or appears to be imperiled.

Sec. 1.6851-1(a), Income Tax Regs.; sec. 301.6861-1(a), Proced. & Admin. Regs.  Notice and demand may be issued for the immediate payment of a tax whose collection is determined to be in jeopardy.  Sec. 6331(a).  Upon a failure or refusal to pay such

---

[18]Pursuant to sec. 1.6851-1, Income Tax Regs., and sec. 301.6861-1, Proced. & Admin. Regs., the Secretary authorizes certain IRS employees to determine whether the collection of a tax is in jeopardy.

tax, the Secretary may immediately levy upon the property or rights to property of the person subject to the tax liability without regard to the 10-day period otherwise required under section 6331(a).[19]  Pursuant to section 6330(f), the person subject to such a jeopardy levy is entitled to a section 6330 hearing within a reasonable period of time after the jeopardy levy.  Pursuant to section 6330(d), this Court has jurisdiction to review the determination of respondent's Appeals Office with respect to a jeopardy levy.  Dorn v. Commissioner, 119 T.C. 356, 359 (2002).  We review such determinations for abuse of discretion.  Zapara v. Commissioner, 124 T.C. 223, 228 (2005).

In the instant case, respondent's Appeals Office incorporated petitioner's jeopardy levy hearing into petitioner's section 6330 hearing on remand, and the Appeals officer sustained the jeopardy levy.  The actions of petitioner with respect to the 1997 bankruptcy sale proceeds demonstrate that the jeopardy levy was proper.  Petitioner received the bankruptcy sale proceeds after the discharge of Barbara Drake and petitioner from the 1997 bankruptcy, and a Federal tax lien attached.  Subsequently, petitioner gratuitously transferred the bankruptcy sale proceeds to Darren Drake and Gregory Drake, Jr., who took the proceeds

---

[19]Assuming that sec. 6331(k)(1) applies to a jeopardy levy case, in the instant case, sec. 6331(k)(1) did not preclude a jeopardy levy against petitioner because respondent accepted petitioner's offer-in-compromise for processing only after the jeopardy levy had been imposed.

subject to the Federal tax lien and who thereafter held the proceeds in their personal brokerage account.  However, on a collection information statement received by respondent on January 14, 2000, petitioner did not respond to the question of whether assets had recently been sold or otherwise transferred for less than their full value.  On January 30, 2002, Mr. Burke provided Settlement Officer O'Shea with a copy of another collection information statement, signed by petitioner on January 24, 2002, on which petitioner responded "no" to the question of whether petitioner had transferred any assets out of his name for less than their actual value in the last 10 years.  Furthermore, during the initial section 6330 hearing, petitioner failed to provide documents requested by Appeals Officer Kaplan relating to the whereabouts of the 1997 bankruptcy sale proceeds.

Petitioner appears to have been designing to quickly place the 1997 bankruptcy sale proceeds beyond the reach of the Government by transferring such proceeds to third parties, who might have dissipated the funds absent an immediate collection action.  Based on the administrative record in the instant case, we conclude that respondent's Appeals officer did not abuse her discretion in sustaining the jeopardy levy against petitioner.

D.   Whether the Parties Completed a Global Settlement Agreement.

Petitioner contends that respondent set forth a global settlement offer pursuant to the terms of Attorney Cardone's

letter to Mr. Burke dated December 20, 2006; that Mr. Burke orally accepted respondent's offer on behalf of petitioner and petitioner's family during Mr. Burke's telephone conference with Attorney Cardone on January 6, 2006; and that Attorney Cardone demonstrated that the parties had completed the global settlement agreement by sending to Mr. Burke the proposed stipulated decision, the proposed waiver, and the memoranda from Darren Drake and Gregory Drake, Jr.[20] Consequently, petitioner contends that respondent's Appeals officer erred in determining that the parties did not enter into a settlement agreement.[21]

Parties to a controversy before this Court may settle the matter by agreement. Dorchester Indus. v. Commissioner, 108 T.C. 320, 329 (1997), affd. without published opinion 208 F.3d 205 (3d Cir. 2000). The parties may not repudiate a valid settlement. Id. at 330. In the absence of fraud or mistake, we have declined to set aside a settlement that was duly executed by the parties and filed with the Court. Id. We do not, however, enforce a

---

[20]The aforementioned contentions are primarily set forth in petitioner's "Motion to Compel Settlement", which, for reasons set forth in this opinion, we deny.

[21]With respect to the global settlement, an attachment to the supplemental notice of determination states as follows: "Your representative and IRS Area Counsel attempted to reach settlement terms for this and other related cases. That attempt was unsuccessful." Separately, the attachment stated: "In a telephone conversation on February 13, 2006, the Settlement Officer informed your representative that she did not agree that the case now included Mrs. Drake and that she would no longer hold the CDP case in abeyance in hopes of an outside settlement."

settlement not intended by both parties.  <u>Id.</u>

General principles of contract law determine whether the parties reached a settlement.  <u>Id.</u>  An objective manifestation of mutual assent to essential terms is a prerequisite to the formation of a contract.  <u>Id.</u>  Mutual assent generally requires an offer and an acceptance.  <u>Id.</u>  A settlement agreement may be reached in the absence of a writing, through offer and acceptance.  <u>Id.</u>

In the instant case, we conclude that the parties did not mutually assent to the settlement.  We agree with petitioner that Attorney Cardone's letter to Mr. Burke dated December 20, 2005, constituted a settlement offer.  The record demonstrates, however, that petitioner did not timely accept respondent's offer.  Mr. Burke's letter to Attorney Cardone dated December 19, 2005, demonstrates that the parties disagreed as to whether the global settlement should include a provision barring the award of litigation costs.  Mr. Cardone's letter to Mr. Burke dated December 21, 2005, stated that respondent's offer would lapse unless Barbara Drake and petitioner accepted all of the settlement terms by December 28, 2005.  Barbara Drake and petitioner did not accept the terms of the settlement agreement as of that date, and, consequently, respondent's offer lapsed by its own terms.  We, therefore, conclude that Mr. Burke's purported oral acceptance of the settlement terms on January 6,

2006, was late and therefore ineffective.

Although the parties appear to have neared a settlement agreement during the conference on January 6, 2006, the parties' subsequent actions demonstrate that such an agreement was never completed. (1) Although Attorney Cardone sent to Mr. Burke the proposed stipulated decision and the proposed waiver, each referencing the settlement terms outlined in Attorney Cardone's letter to Mr. Burke dated December 20, 2005, the documents were never signed. (2) The status report filed with this Court by petitioner in January of 2006 stated that "counsel have undertaken extensive negotiations to resolve the subject matter and believe that they have achieved a basis for settlement" but did not state that the parties had completed the settlement agreement on January 6, 2006, as petitioner now claims. (3) The status report filed with this Court by respondent in January of 2006 stated that "the parties have not resolved the outstanding income tax liabilities but negotiations are on going." (4) Neither petitioner nor respondent at any time filed with this Court a stipulated decision or a related motion for entry of decision. (5) Although the settlement terms purport to resolve Barbara Drake's section 6015 claim, Barbara Drake's "Motion to Request the Determination of a Tax Liability" remained pending before the bankruptcy court until that court issued its opinion on January 11, 2006, subsequent to the date on which petitioner

now claims to have completed the global settlement agreement.[22] Finally, (6) Attorney Forbes's letter to Mr. Burke dated January 13, 2006, stated that petitioner and related parties had not accepted the settlement terms and that respondent was "hereby withdrawing the proposed January 6, 2006 settlement unless Barbara Drake agrees to the vacatur of the January 11, 2006 Memorandum Decision and January 12, 2006 Order of the Bankruptcy Court."[23]

Based on the administrative record in the instant case, we conclude that no objective manifestation of mutual assent existed with respect to the global settlement. Although Mr. Burke and Attorney Cardone attempted to reach agreement as to most if not all of the settlement terms outlined in Mr. Cardone's letter of December 20, 2005, the record demonstrates that the parties did not complete an enforceable settlement agreement.[24]

---

[22]We note that Mr. Burke is listed as a counsel of record in In re Drake, 336 Bankr. 155 (Bankr. D. Mass. 2006), in addition to representing petitioner in the instant case.

[23]Attorney Forbes's letter is consistent with respondent's position as set forth in respondent's "Response to Motion to Compel", which contended that the documents sent by Attorney Cardone to Mr. Burke on Jan. 6, 2006, constituted a settlement offer requiring the signature of petitioner and the related parties for acceptance.

[24]Because we hold that the global settlement agreement is not enforceable, we need not address whether the Court has jurisdiction with respect to a settlement agreement governing parties other than the petitioner.

E.    Whether Appeals Officer Kramer Improperly Rejected
      Petitioner's Offer-in-Compromise.

We understand petitioner to contend that Appeals Officer
Kramer improperly rejected petitioner's offer-in-compromise.[25]
Petitioner contends that Appeals Officer Kramer erred in
determining that petitioner did not submit requested financial
verification documents because Appeals Officer Kramer neither
requested documentation nor set forth a deadline for petitioner
to submit such documentation after accepting petitioner's offer-
in-compromise for processing on January 19, 2006.  Petitioner
further contends that the global settlement agreement "mooted"
any request for documentation made prior to January 6, 2006.

If an offer-in-compromise that has been accepted by the IRS
for processing does not contain sufficient information to permit
the IRS to evaluate whether the offer should be accepted, the IRS
will request that the taxpayer provide the needed additional
information.[26]  Sec. 301.7122-1(d)(2), Proced. & Admin. Regs.  In

_____

[25]With respect to petitioner's offer-in-compromise,
petitioner's primary contention is that "Respondent erred in
failing to compromise the parties' dispute on the terms of the
[global settlement] Agreement."  Because we previously addressed
petitioner's contention that the parties entered into a
settlement agreement, we now address petitioner's related
contention that petitioner did not receive a request for further
information from respondent.

[26]If the taxpayer does not submit the additional information
that the IRS has requested within a reasonable time period after
such a request, sec. 301.7122-1(d)(2), Proced. & Admin. Regs.,
(continued...)

the instant case, during the conference between Mr. Burke and Appeals Officer Kramer on November 4, 2005, Mr. Burke was asked to submit additional documents needed for the evaluation of petitioner's offer-in-compromise by November 14, 2005. Petitioner neither disputes that such a request was made nor contends that such documents were in fact submitted in response to the request.

Based on the administrative record in the instant case, we are unable to conclude that the global settlement negotiations affected the document request as alleged by petitioner. More than 4 months elapsed from the date of the document request until the issuance of the supplemental notice of determination, and Appeals Officer Kramer was not required to make further requests. We conclude that the record demonstrates that Appeals Officer Kramer's rejection of the offer-in-compromise was not an abuse of discretion.[27]

---

[26](...continued) provides that the IRS may return the offer to the taxpayer.

[27]Petitioner alleges that he received from respondent a letter dated Jan. 19, 2006, which stated: "If your offer in compromise requires further actions, the Appeals employee will set a deadline for completion. These actions can include adding periods of liability or providing more financial information. If the deadline is not met, your offer in compromise will be returned." Because respondent had already requested further financial information as of the date of the alleged letter, such language appears to be surplusage. Nonetheless, petitioner had been provided ample opportunity to submit the requested documents prior to Jan. 19, 2006, and petitioner could have but apparently
(continued...)

## V.   Whether Petitioner Is Entitled to Litigation Costs

Petitioner contends that he substantially prevailed with respect to the most significant issue presented in the proceeding before this Court,[28] that he meets the net worth requirements of 28 U.S.C. 2412(d)(2)(B), that he exhausted administrative remedies, and that he did not unreasonably protract the court proceedings.  Consequently, petitioner contends that he is entitled to litigation costs in the amount of $20,007.45.

Section 7430(a) provides that an individual may recover litigation costs incurred in a court proceeding brought against the United States in connection with the determination of a tax or penalty.  Litigation costs may be awarded pursuant to section 7430 if (1) the individual is the prevailing party, (2) the individual has exhausted administrative remedies, (3) the individual has not unreasonably protracted the court proceedings, and (4) the claimed litigation costs are reasonable.  Sec. 7430(a), (b)(1), (3), (c)(4).  The requirements of section 7430 are conjunctive, and the individual has the burden of proving that each of these requirements has been satisfied.  See Rule 232(e); Minahan v. Commissioner, 88 T.C. 492, 497 (1987).

---

[27](...continued)
did not contact respondent's Appeals officer to resolve any confusion.

[28]Specifically, petitioner contends that he prevailed in Drake I, on the basis of his argument that the initial sec. 6330 hearing was improper.

To qualify as the prevailing party, the individual must substantially prevail with respect to either the amount in controversy or the most significant issue or set of issues presented in the Court proceeding, and the individual must satisfy the net worth requirement of section 7430(c)(4)(ii).[29] Sec. 7430(c)(4)(A).  The Court looks to the final outcome of the case to determine whether the individual has substantially prevailed within the meaning of section 7430(c)(4)(A).  Cassuto v. Commissioner, 936 F.2d 736, 741 (2d Cir. 1991), affg. in part and revg. in part 93 T.C. 256 (1989); Bowden v. Commissioner, T.C. Memo. 1999-30.  The issuance of the Drake I opinion did not represent the final outcome of the instant case, as we remanded the case to respondent's Appeals Office for a new section 6330 hearing while retaining jurisdiction.  Consequently, we conclude that petitioner did not substantially prevail for purposes of section 7430(c)(4)(A) based upon the decision of this Court in Drake I.

The most significant issue raised in the instant proceeding is whether the ultimate determination of respondent's Appeals Office to sustain the proposed levy action against petitioner constitutes an abuse of discretion.  Petitioner has not prevailed

---

[29]Sec. 7430(c)(4)(A)(ii), as relevant here, effectively limits the award of litigation costs to individuals with a net worth of $2 million or less.  Stieha v. Commissioner, 89 T.C. 784, 789-790 (1987).

on that issue.  Consequently, petitioner is not the prevailing

party and is not entitled to an award of litigation costs

pursuant to section 7430.  We need not decide whether petitioner

exhausted administrative remedies, whether petitioner

unreasonably protracted the court proceedings, or whether the

claimed litigation costs are reasonable.

VI.  Conclusion

The record demonstrates that respondent's Appeals Office (1)

verified that the requirements of applicable laws and

administrative procedures had been met, (2) properly addressed

the issues raised by petitioner during the initial section 6330

hearing and the section 6330 hearing on remand, and (3) and

balanced the need for the efficient collection of taxes with the

concern that the collection action be no more intrusive than

necessary.  Consequently, we hold that the decision of

respondent's Appeals Office to sustain the proposed levy against

petitioner is not an abuse of discretion.  Accordingly, we hold

that petitioner is not entitled to an award of litigation costs

as the prevailing party.  Additionally, petitioner's "Motion to

Compel Settlement" will be denied.  We have considered all of the

parties' contentions.  To the extent not addressed herein, such

contentions are without merit or are unnecessary to reach.

To reflect the foregoing,

An appropriate order will
be issued.