125 T.C. No. 9

UNITED STATES TAX COURT

GREGORY DRAKE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20454-03L.              Filed October 12, 2005.


     Prior to a scheduled sec. 6330, I.R.C., hearing
with P, R's settlement officer received a memorandum
from R's insolvency unit advisor that questioned the
credibility and motives of P's counsel in a prior court
proceeding.  P was not provided an opportunity to
participate in the ex parte communication.

     <u>Held</u>:  The memorandum constitutes a prohibited ex
parte communication pursuant to Rev. Proc. 2000-43,
2000-2 C.B. 404, and therefore the instant case will be
remanded to R's Appeals Office for a new hearing.


<u>Timothy J. Burke</u>, for petitioner.

<u>Louise R. Forbes</u>, for respondent.

OPINION

WELLS, <u>Judge</u>:  Respondent's Appeals Office determined that a proposed levy should be sustained against petitioner, who timely filed a petition for review of the determination.  We review the determination for abuse of discretion.  Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

<u>Background</u>

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference.

Petitioner Gregory Drake and Barbara Drake are husband and wife.  At the time of the filing of the petition, petitioner resided in South Yarmouth, Massachusetts.

As of August 19, 1997, respondent had filed Notices of Federal Tax Lien against petitioner for income tax liabilities for 1991, 1992, and 1995.  On that date, Barbara Drake and petitioner filed a joint bankruptcy petition under chapter 13 of the Bankruptcy Code with the U.S. Bankruptcy Court for the District of Massachusetts.  In the bankruptcy proceedings, Barbara Drake and petitioner received authority to sell three properties which were subject to Federal tax liens.  The properties were sold free and clear of the tax liens, with a tax

lien attaching to the sale proceeds.[1]  Subsequently, the bankruptcy trustee filed a motion to dismiss the case for failure to file a repayment plan,[2] and Barbara Drake and petitioner filed a Motion for Authority to Disburse Funds.[3]  The court granted the motion to dismiss and issued an order mooting the Motion for Authority to Disburse Funds.  Upon the dismissal of the case on June 30, 1999, the attorney representing Barbara Drake and petitioner in the bankruptcy proceedings distributed to Barbara Drake and petitioner sale proceeds in the amount of $151,139.74.[4]  Petitioner subsequently transferred, for no consideration, the sale proceeds to his sons, Darren Drake and Gregory Drake, Jr.  On October 6, 1999, Notices of Federal Tax Lien were filed against Barbara Drake and petitioner with respect to their 1994, 1995, and 1997 tax years.

On July 19, 2000, respondent mailed to Barbara Drake and petitioner a Final Notice, Notice of Intent to Levy and Notice of Your Right to a Hearing, with respect to their 1991, 1992, 1994,

---

[1]The sale yielded proceeds of $161,250.65.

[2]Pursuant to 11 U.S.C. sec. 1321 (2000), a debtor in a ch. 13 case must file a repayment plan.  Pursuant to 11 U.S.C. sec. 1307, the bankruptcy court may dismiss a case for failure to file a timely repayment plan.

[3]The motion provided for sale proceeds to be distributed to creditors, including respondent.

[4]This amount represented the sale proceeds less legal fees and expenses.  We note that Barbara Drake and petitioner were represented in the bankruptcy proceedings by Neal E. Satran, who is not involved petitioner's sec. 6330 proceedings.

1995, and 1997 tax years. The notice asserted an unpaid tax of $121,478.17 and penalties and interest of $88,607.27. Pursuant to a power of attorney, Timothy J. Burke (Mr. Burke) submitted a timely Form 12153, Request for a Collection Due Process Hearing, on behalf of Barbara Drake and petitioner. Subsequently, on behalf of Barbara Drake, Mr. Burke submitted a Form 8857, Request for Innocent Spouse Relief, with respect to each of the years in dispute.

Settlement Officer Eugene O'Shea was assigned to conduct the requested section 6330 hearing, and he determined from Internal Revenue Service records that petitioner had previously filed for bankruptcy protection. On January 30, 2002, prior to the section 6330 hearing, Settlement Officer O'Shea conferred with Advisor Sid Gordon of the Internal Revenue Service Insolvency Unit regarding the bankruptcy case and requested related documentation. On the same date, Advisor Gordon faxed to Settlement Officer O'Shea a copy of Advisor Gordon's prior memorandum to respondent's counsel Louise R. Forbes (Attorney Forbes).[5] In the memorandum, dated October 5, 1999, Advisor Gordon stated that proceeds from the prior sale of the three properties subject to Federal tax liens had been distributed to Barbara Drake and petitioner, that the proceeds should have been

_____

[5]Louise R. Forbes, senior attorney in respondent's Office of Chief Counsel, represents respondent in the instant case.

distributed to the creditors of Barbara Drake and petitioner, and that Advisor Gordon believed that the attorney of Barbara Drake and petitioner had "used the Court to bypass the Federal tax Lien."  The memorandum further stated:

> According to the settlement sheets the debtor received $161,094.73 from the three sales.  Although the Bankruptcy Court approved the sales under 11 USC 363 the IRS received nothing.  Attorney Satran had knowledge of the Internal Revenue Service Federal Tax Liens due to the considerable litigation involved in this case.  In fact Attorney Satran filed a motion with the Court to disburse the funds including [sic] the IRS liens.  It is a mockery to the integrity [of the] Bankruptcy Court if an Attorney can use it to defeat a Federal Tax Lien allowing a Debtor to walk away with the proceeds.  The Bankruptcy Code was used because 11 USC 363 was authorized by the Court.
>
> I informed Attorney Campobasso that Attorney Satran had previously been suspended by the Bankruptcy Court.  Chief, US Bankruptcy Court Judge Carol J Keener suspended attorney Satran from 01/30/1996 through 11/29/1996.  The action of Attorney Satran in a Chapter 11 case [involving] Paula Wyner, Carlton House of Brockton, Inc. was the cause of the suspension.  I think the Court should be informed of the conduct of Attorney Satran in this case.

On January 30, 2002, Mr. Burke attended a meeting with Settlement Officer O'Shea, who did not inform petitioner of his communications with Advisor Gordon.  Mr. Burke provided a copy of Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, and Form 433-B, Collection Information Statement for Businesses.  A Form 656, Offer-in-Compromise, had been completed but was not submitted to Settlement Officer O'Shea for consideration.  Petitioner concedes that the parties

informally suspended consideration of any offer-in-compromise pending a determination of Barbara Drake's request for innocent spouse relief, which would influence whether petitioner filed an individual offer-in-compromise or a joint offer-in-compromise.

By letter dated February 5, 2002, respondent made a preliminary determination denying Barbara Drake's request for innocent spouse relief, and she appealed the determination to respondent's Appeals Office. The Appeals Office assigned Appeals Officer Jeffrey Kaplan to the case.

On September 4, 2002, petitioner submitted to respondent's Appeals Office an "amended" Form 656, Offer-in-Compromise, offering to pay $5,500 in satisfaction of petitioner's tax liabilities for 1991, 1992, 1993, 1994, 1995, 1997, and 1999.[6] In a letter to petitioner dated September 4, 2002, Settlement Officer O'Shea acknowledged receiving the amended offer-in-compromise but noted that consideration of the original offer-in-compromise had been informally suspended by the parties pending the determination of Barbara Drake's request for innocent spouse relief. Accordingly, Settlement Officer O'Shea informed Mr. Burke that no original offer-in-compromise had been submitted for consideration and returned the amended Form 656 to Mr. Burke. Petitioner concedes that the reason for returning the Form 656 was to avoid any administrative confusion.

---

[6]The tax years 1993 and 1999 were not within the scope of the proposed levy nor part of the initial request for a sec. 6330 hearing.

On January 17, 2003, the section 6330 matter was transferred from Settlement Officer O'Shea to Appeals Officer Kaplan,[7] who subsequently advised Mr. Burke that no offer-in-compromise was presently before the Appeals Office, as no original offer-in-compromise had been submitted for consideration and the amended offer-in-compromise had been returned to Mr. Burke.  Appeals Officer Kaplan informed Mr. Burke that any offer-in-compromise should be larger than the $5,500 amount of the amended offer-in-compromise submitted on September 4, 2002.  Appeals Officer Kaplan also noted that the former residence of Barbara Drake and petitioner was now owned by their son and that the transfer appeared questionable.

In a conversation on June 16, 2003, Mr. Burke informed Appeals Officer Kaplan that Darren Drake, the son of Barbara Drake and petitioner, had foreclosed upon and bought petitioner's house.  Appeals Officer Kaplan requested documentation related to the foreclosure and transfer.

In a letter dated July 2, 2003, Appeals Officer Kaplan informed Mr. Burke that he would proceed with the section 6330 determination against Barbara Drake and petitioner.  The letter made the following request, reproduced verbatim, for the production of documents:

---

[7]As noted above, Appeals Officer Kaplan had been assigned to Barbara Drake's innocent spouse relief appeal.

1. Documentation regarding what was done with the funds received by the taxpayers from the sale of property as part of their bankruptcy proceedings, along with how much was actually received.

2. Documentation of the value of the property located at 40 Keel Cape Drive, South Yarmouth, MA, prior to the foreclosure.

3. Documentation of the foreclosure.

4. Documentation regarding the amount owed on the mortgage by the taxpayers at the time of the foreclosure.

5. Documentation regarding the entity that acquired the mortgage from the prior mortgage holder prior to the foreclosure.

6. Copies of the mortgage.

7. Documentation of the acquisition of the property by Darren Drake.

8. An updated Collection Information Statement for Mr. and Mrs. Drake.

9. Completed Offer-in-Compromise Questionnaire.

10. An updated Collection Information Statement for their businesses.

Appeals Officer Kaplan informed Mr. Burke that he would make a section 6330 determination based on information already within his possession unless Mr. Burke submitted the requested documents by July 30, 2003. In addition, Appeals Officer Kaplan informed Mr. Burke that any offer-in-compromise should also be submitted. In August of 2003, Mr. Burke provided respondent's Appeals Office

with numerous documents.  However, Appeals Officer Kaplan informed Mr. Burke that he had not received all of the requested information.

On September 30, 2003, Barbara Drake filed a bankruptcy petition under chapter 13 of the Bankruptcy Code with the U.S. Bankruptcy Court for the District of Massachusetts.  In October of 2003, Mr. Burke advised Appeals Officer Kaplan that Barbara Drake had filed a bankruptcy petition under chapter 13 of the Bankruptcy Code, that the automatic stay of 11 U.S.C. sec. 362 applied to petitioner as well as Barbara Drake, and that 11 U.S.C. sec. 1301 precluded any collection action against either Barbara Drake or petitioner.  On October 27, 2003, Appeals Officer Kaplan requested legal advice from Attorney Forbes concerning the preclusion of any collection action against petitioner.  Attorney Forbes advised that 11 U.S.C. sec. 1301 did not preclude the collection action against petitioner.[8]

---

[8] 11 U.S.C. sec. 1301(a) (2000) provides:

Sec. 1301 Stay of action against codebtor

(a) Except as provided in subsections (b) and (c) of this section, after the order for relief under this chapter, a creditor may not act, or commence or continue any civil action, to collect all or any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor, or that secured such debt, unless--

(1) such individual became liable on or secured such debt in the ordinary course of such individual's business; or

(continued...)

Consequently, on October 27, 2003, Appeals Officer Kaplan advised Mr. Burke that the collection action could and would proceed against petitioner. In addition, Appeals Officer Kaplan advised Mr. Burke that information previously requested had not been received by the Appeals Office and that the Appeals Office would close the case and issue a determination based on information already in its possession unless Mr. Burke submitted the information immediately. Appeals Officer Kaplan did not receive the requested information and closed the case file on October 29, 2003. Subsequently, respondent sent petitioner a notice of determination (notice of determination), determining that all statutory administrative and procedural requirements had been met and that available information did not establish that an offer-in-compromise was a viable collection alternative. On January 29, 2004, the Appeals Office issued to Barbara Drake a Final Notice of Determination Concerning Your Request for Relief from Joint and Several Liability under I.R.C. sec. 6015, denying the requested relief. This Court dismissed Barbara Drake's

---

[8](...continued)
      (2) the case is closed, dismissed, or converted to a case under chapter 7 or 11 of this title.

Respondent contends that tax debt is not considered consumer debt for purposes of 11 U.S.C. sec. 1301(a). In re Stovall, 209 Bankr. 849 (Bankr. E.D. Va. 1997); In re Dye, 190 Bankr. 566 (Bankr. N.D. Ill. 1995). Consequently, respondent contends that the stay of 11 U.S.C. sec. 1301(a) did not preclude the collection action against petitioner. In the instant case, petitioner does not dispute respondent's contention that the stay did not preclude collection against petitioner.

subsequent petition for innocent spouse relief.  See <u>Drake v.</u>
<u>Commissioner</u>, 123 T.C. 320 (2004).  Petitioner timely petitioned
this Court for judicial review of the notice of determination.[9]

Discussion

Section 6330(a) provides that no levy may be made on any
property or right to property of a person unless the Secretary
first notifies the person in writing of the right to a hearing
before the IRS Office of Appeals (Appeals Office).[10]  Section
6330(c)(1) provides that the Appeals officer must verify at the
hearing that applicable laws and administrative procedures have
been followed.[11]  Sec. 6330(c)(1).  At the hearing, the person

---

[9]On Dec. 1, 2003, petitioner filed a timely Petition for
Levy Action Under Section 6330.  Petitioner submitted an amended
petition on Jan. 18, 2005.

[10]SEC. 6330 NOTICE AND OPPORTUNITY FOR HEARING BEFORE LEVY.

    (a) Requirement of Notice Before Levy.--

        (1) In general.--No levy may be made on any
property or right to property of any person unless the
Secretary has notified such person in writing of their
right to a hearing under this section before such levy
is made.  * * *

      *    *    *    *    *    *    *

    (b) Right to Fair Hearing.--

        (1) In general.--If the person requests a hearing
* * *, such hearing shall be held by the Internal
Revenue Service Office of Appeals.

[11]Sec. 6330(c)(1) provides:

Requirement of investigation.--The appeals officer shall at
(continued...)

may raise any relevant issue relating to the unpaid tax or the proposed levy, including appropriate spousal defenses, challenges to the appropriateness of collection actions, and collection alternatives. Sec. 6330(c)(2)(A). The person may challenge the existence or amount of the underlying tax liability, however, only if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability. Sec. 6330(c)(2)(B).[12] In the instant case, petitioner does not contest the underlying tax liability, and, consequently, we review the Appeals officer's determination for abuse of discretion. See Goza v. Commissioner, 114 T.C. 176, 181-182 (2000); Sego v. Commissioner, 114 T.C. 604, 610 (2000).

Petitioner contends, inter alia, that Settlement Officer O'Shea and Appeals Officer Kaplan did not conduct the administrative review in good faith, as evidenced by the ex parte communication between Settlement Officer O'Shea and Advisor

---

[11](...continued)
the hearing obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met.

[12]Sec. 6330(c)(2)(B) provides:

(B) Underlying liability.--The person may also raise at the hearing challenges to the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability.

Gordon on January 30, 2002. As discussed above, on that date, Advisor Gordon faxed to Settlement Officer O'Shea a copy of a prior memorandum from Advisor Gordon to Attorney Forbes, dated October 5, 1999, which discussed the distribution of proceeds from the sale of petitioner's three properties subject to Federal tax liens upon dismissal of petitioner's bankruptcy case. Respondent contends that the ex parte communication between Settlement Officer O'Shea and Advisor Gordon was inconsequential because Settlement Officer O'Shea received no factual information not already known to petitioner. Additionally, respondent contends that petitioner was provided with the opportunity to discuss the distribution of sale proceeds, as demonstrated by the letter from Appeals Officer Kaplan to Mr. Burke dated July 2, 2003.

The Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 1001(a), 112 Stat. 689, directed the Commissioner of Internal Revenue to develop a plan to prohibit ex parte communications between Appeals officers and other employees of the Internal Revenue Service that appear to compromise the independence of the Appeals officers:

> The Commissioner of the Internal Revenue shall develop and implement a plan to reorganize the Internal Revenue Service. The plan shall * * * (4) ensure an independent appeals function within the Internal Revenue Service, including the prohibition in the plan of ex parte communications between appeals officers and other Internal Revenue Service employees to the extent that such communications appear to compromise the

independence of the appeals officers.

To fulfill that congressional mandate to ensure an independent Appeals Office, respondent issued Rev. Proc. 2000-43, 2000-2 C.B. 404, which is effective for communications between employees of the Appeals Office and other Internal Revenue Service employees taking place after October 23, 2000. See Harrell v. Commissioner, T.C. Memo. 2003-271. Rev. Proc. 2000-43, sec. 3, Q&A-1, 2000-2 C.B. at 405, provides the following general description of the prohibition on ex parte communications:

> For the purposes of this revenue procedure, ex parte communications are communications that take place between Appeals and another Service function without the participation of the taxpayer or the taxpayer's representative (taxpayer/representative). While the legislation refers to "appeals officers," the overall intent of the ex parte provision is to ensure the independence of the entire Appeals organization. Ex parte communications between any Appeals employee, e.g., Appeals Officers, Appeals Team Case Leaders, Appeals Tax Computation Specialists, and employees of other Internal Revenue Service offices are prohibited to the extent that such communications appear to compromise the independence of Appeals.

Rev. Proc. 2000-43, 2000-2 C.B. 404, provides that an Appeals officer may not engage in ex parte discussions of the strengths and weaknesses of the issues of a case that would appear to compromise the Appeals officer's independence and must give the taxpayer an opportunity to participate in any discussions concerning matters that are not ministerial, administrative, or procedural in nature. Rev. Proc. 2000-43,

sec. 3, Q&A-6, 2000-2 C.B. at 406.  The revenue procedure specifically prohibits ex parte discussions of the "originating function's perception of the demeanor or credibility of the taxpayer or the taxpayer's representative" during the course of the preliminary review of a newly assigned case.[13]  Rev. Proc. 2000-43, sec. 3, Q&A-5, 2000-2 C.B. at 405-406.

In the instant case, the memorandum faxed by Advisor Gordon to Settlement Officer O'Shea on January 30, 2002, runs afoul of Rev. Proc. 2000-43, sec. 3, Q&A-5, 2000-2 C.B. at 405-406.  The memorandum was not ministerial, administrative, or procedural in nature.  By questioning the credibility and motives of petitioner's counsel in the bankruptcy proceedings, the memorandum may have had the effect of damaging petitioner's credibility in the administrative proceedings before Settlement Officer O'Shea, who neither informed petitioner of the communications with Advisor Gordon nor provided petitioner with the opportunity to participate in the ex parte communication.

---

[13]Rev. Proc. 2000-43, sec. 3, Q&A-5, 2000-2 C.B. 404, 405-406, expressly applies to communications with the "originating function".  The IRS Insolvency Unit does not appear to be an originating function for purposes of the revenue procedure.  See Rev. Proc. 2000-43, sec. 3, Q&A-20, 2000-2 C.B. at 408.  However, Rev. Proc. 2000-43, sec. 3, Q&A-6, 2000-2 C.B. at 406, provides that the ex parte communications prohibition also applies to Appeals consideration of cases that originated in the Collection function.  Such cases that originate in the Collection function include collection due process appeals.  Id.  Consequently, the ex parte communications prohibition applies to the instant collection due process appeal.

Rev. Proc. 2000-43, Q&A-21, 2000-2 C.B. at 408, defines the

phrase "opportunity to participate" as follows:

> It means that the taxpayer/representative will be given
> a reasonable opportunity to attend a meeting or be a
> participant in a conference call between Appeals and
> the originating function when the strengths and
> weaknesses of issues or positions in the taxpayer's
> case are discussed.  The taxpayer/representative will
> be notified of a scheduled meeting or conference call
> and invited to participate.  * * *

Because petitioner was not given an opportunity to participate in

a meeting or conference call with Advisor Gordon, we conclude

that petitioner did not have an opportunity to participate in the

ex parte communication for purposes of Rev. Proc. 2000-43, supra.

Based on the foregoing, we conclude that the communication

between Advisor Gordon and Settlement Officer O'Shea constituted

a prohibited ex parte communication that may have damaged

petitioner's credibility before Settlement Officer O'Shea and

Appeals Officer Kaplan.[14]  Consequently, we hold that Appeals

Officer Kaplan abused his discretion and shall remand the instant

case to respondent's Appeals Office for a new section 6330

hearing with an independent Appeals officer who has received no

communication relating to the credibility of petitioner or

---

[14]The record reveals that the memorandum from Advisor Gordon to Attorney Forbes became a part of respondent's administrative file and was ultimately reviewed by Appeals Officer Kaplan.  The record further reveals that Appeals Officer Kaplan did not provide petitioner with a copy of the memorandum.

petitioner's representative.[15]

    To reflect the foregoing,

<u>An appropriate order will</u>

<u>be issued</u>.

_____

    [15]Petitioner also contends that the ex parte communication between Appeals Officer Kaplan and Attorney Forbes on Oct. 27, 2003, demonstrates that Appeals Officer Kaplan did not conduct the administrative review in good faith.  In light of our holding above, we need not decide whether the communication between Appeals Officer Kaplan and Attorney Forbes constitutes a prohibited ex parte communication for purposes of Rev. Proc. 2000-43, <u>supra</u>.  We note, however, that Attorney Forbes was the recipient of the original memorandum from Advisor Gordon which questioned the credibility of petitioner's counsel in the bankruptcy proceeding.

    In addition to petitioner's contentions with respect to the ex parte communications, petitioner contends that petitioner's Fifth Amendment right to due process was violated by the absence of "recognizable" procedures to be followed in the sec. 6330 hearing; that petitioner did not receive a sec. 6330 hearing before an impartial officer; that the proposed collection alternative was "viable"; that Appeals Officer Kaplan's request that petitioner submit financial documentation without investigating prior statements demonstrates his bias; and that respondent did not balance the need for the efficient collection of taxes with the legitimate concern that the collection be no more intrusive than necessary.  Because we remand the instant case to respondent's Appeals Office for a new hearing, we need not consider the aforementioned contentions.