T.C. Memo. 2007-93


UNITED STATES TAX COURT


INDUSTRIAL INVESTORS, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 14928-04L.            Filed April 23, 2007.


William G. Wells, for petitioner.

Elaine T. Fuller, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


HOLMES, Judge:  The Commissioner sent Industrial Investors, Inc., a notice saying that he intended to levy on its property to collect unpaid 1990, 1991, and 1992 taxes.  Industrial asked for a collection due process (CDP) hearing.  Though Industrial is located near Los Angeles, the revenue officer handling the case forwarded Industrial's files, along with a cover letter

describing in some detail why she thought the levy should be sustained, to the IRS Appeals Office in Oklahoma City. The Appeals officer in Oklahoma City scheduled a telephone CDP hearing on a day that Industrial's representative had been subpoenaed to testify in California State court. Not wasting any time after the inevitable default, the Appeals officer wrote a notice of determination later that same day that sustained the proposed levy. Industrial argues that this determination was an abuse of discretion.

## FINDINGS OF FACT

Industrial's 1990-92 taxes first came before this Court in 1994 when Industrial petitioned us to redetermine its deficiencies for those years. That case finally settled while our decision was pending on appeal to the Ninth Circuit. Industrial, however, never paid and in 2004 the Commissioner mailed it a notice stating that the IRS intended to collect by levy. Industrial promptly requested a CDP hearing to seek an offer-in-compromise. The revenue officer who had been working on the case forwarded that request to the Oklahoma City Appeals Office. Accompanying the files was a cover letter from the revenue officer. The letter is the key to this case, and deserves to be quoted at some length:

Mr. Wells[1] on behalf of Industrial Investors Inc is requesting a collection due process hearing for Filed Notice of Federal Tax Lien and Notice of Levy/Seizure.  The Notice of Federal Tax Liens previously filed in 1998.  Therefore, no CDP hearing on the recorded Notices of Federal Tax Liens should be considered.  As for the Notice of Intent to Levy, this should proceed accordingly.

Since Mr. William G. Wells has had numerous opportunities to sell, refinance or secure a second mortgage on all real property owned by Industrial Investors Inc and has not done so to this date, it is time that the government secure any and all interest for all assets owned by the Corporation to pay the outstanding tax debts.

* * *

Mr. William G. Wells intends to file an Offer-in-Compromise for his individual tax debts and those of this entity.  However, he has been made aware that no offer is feasible unless all the entities he is associated with are in compliance with filing and paying tax debts.  Many of the entities are not in compliance with filing and paying requirements just like Industrial Investors Inc.  Therefore, an Offer-in-Compromise will not be contemplated unless Mr. William G. Wells cooperates in providing all the entities financial statements, tax returns and pays all the debts or attempts to resolve all compliance issues.

Since Mr. Wells has delayed many of his tax issues via Tax Court, 9th Court of Appeals requests, Collection Due Process Hearing Requests etc., It is recommended that no further delays be granted and that the Internal Revenue Service be authorized to collect the taxes due from Industrial Investors Inc from any and all of the assets which are found to have equity to pay toward its tax debts.  He also signed and agreed to the assessments via the Tax Court recorded date February 17, 1997.

---

[1]  William G. Wells is one of Industrial's shareholders, as well as its secretary, treasurer, and attorney in this case.

On June 21, 2004, Troy Talbott, the Appeals officer handling the case, sent Wells a letter stating that he had started the CDP review and that Wells had until July 8--just twelve business days--to file Industrial's overdue tax returns for 1996 and 2001 as well as submit any collection alternatives and current financial statements.  Two days later, Wells wrote back to Talbott with a summary of a phone conversation they had earlier that day, and promised to respond to Talbott's request for documents once he received an account history for Industrial.  He added that he would need an extension of the July 8 due date, but did attach copies of Industrial's 1996 and 2001 tax returns (which had apparently already been filed) to his letter.

Talbott, it turned out, had anticipated Wells's request for an account history and mailed a copy to Industrial even before Wells asked for one.  Wells sent Talbott a brief note acknowledging receipt of that history on June 28:

> 1. Receipt acknowledged.  2. It appears that 1990-1993 is the problem as no deductions.  3. The $1 million income in 1990 never happened.  4. I will be sending you some papers shortly.

Talbott understood this note to be an omen that Wells planned to revisit the amount of tax owed, and replied with a letter dated July 1, telling Wells that Industrial could not reargue the underlying liability--it had already brought and settled a Tax Court case for those years.  His letter also reconfirmed the July 8 deadline to provide any documentation.  With Independence Day

looming, July 8 was now just four business days away.

On July 8, without checking with Wells to see whether he was available, Talbott set the hearing for Monday, July 19 at 8:00 a.m. PST, specifying that it would be by telephone.[2]  Wells received this letter on July 14--almost a week later--and immediately responded with another of his own.  He explained that he was unavailable on July 19 because he was under subpoena for a trial in California State court beginning that very day.  Wells again complained about the short notice and his inability to provide the requested documents in time.  He also mentioned the appeal to the Ninth Circuit and the subsequent settlement, and wrote that he was attempting to obtain a copy of the settlement agreement for Talbott.

Talbott did not receive Wells's letter by the morning of July 19, so he called Wells to begin the CDP hearing promptly at 8:00 a.m. Pacific time and left a voicemail message.  Wells called Talbott back as soon as he got the message, and ended up leaving a voicemail of his own, again requesting additional time.  But Talbott had already drafted a notice of determination sustaining the notice of intent to levy, and he didn't change his

---

[2] Wells makes much of California's observance of daylight saving time, arguing that there could be some confusion as to what time this call was actually scheduled to begin.  We disagree.  A reasonable person would understand "8:00 a.m. PST" to mean simply "8:00 a.m. Pacific time."  We certainly refuse to invalidate the determination because Talbott wrote "PST" instead of "PDT."

draft even after he received Wells's July 14 letter--the one making clear that a subpoena would make Wells unavailable. Moving quickly, Talbott on July 21 issued the official notice of determination sustaining the notice of intent to levy, a mere month after he had sent his first letter to Wells.

Industrial filed a timely petition in this Court and trial was held in Los Angeles, which is near Industrial's principal place of business.

OPINION

The Commissioner may levy on property belonging to a taxpayer once he gives proper notice and an opportunity for a hearing. See secs. 6330, 6331.[3] During the hearing, a taxpayer can only challenge the existence or amount of the underlying tax liability if he either (1) did not receive a statutory notice of deficiency, or (2) did not otherwise have an opportunity to dispute the liability. Sec. 6330(c)(2)(B). Industrial has had its day in Tax Court, so it can no longer contest its liability-- it can win only if it shows that the Commissioner abused his discretion. Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). He abuses his discretion when he acts "arbitrarily, capriciously, or without sound basis in fact or law." Woodral v. Commissioner, 112 T.C.

---

[3] Unless otherwise noted, all section references are to the Internal Revenue Code in effect for the years at issue; all Rule references are to the Tax Court Rules of Practice and Procedure.

19, 23 (1999). Acting without a sound basis in fact or law means that an agency such as the IRS "makes an error of law * * * or rests its determination on a clearly erroneous finding of fact * * * [or] applies the correct law to facts which are not clearly erroneous but rules in an irrational manner." United States v. Sherburne, 249 F.3d 1121, 1125-26 (9th Cir. 2001); see also Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 402-03 (1990).

Industrial serves up a gallimaufry of arguments that the Commissioner abused his discretion, but we focus on four: (1) the cover letter sent to Talbott was an impermissible *ex parte* communication; (2) Industrial was denied a face-to-face hearing in a location close to its place of business; (3) Talbott unilaterally scheduled a date and time for the CDP hearing without consulting Industrial; and (4) Talbott ignored evidence of the agreement settling Industrial's deficiency case while it was on appeal. Industrial also requests an award of litigation costs under section 7430.

1.  *Ex Parte* Communication

Section 6330 sets out the process for administrative review of decisions by the IRS to levy taxpayers' property. One of the protections that section gives taxpayers is a promise that the hearing will be conducted by an IRS employee who is impartial. Sec. 6330(b)(3). Congress reinforced this requirement by directing the Commissioner to reorganize the IRS so that the

entire IRS Appeals function would be independent. Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 1001(a), 112 Stat. 689. The Commissioner then made the guarantee of impartiality part of the IRS's standard operating procedure by issuing Revenue Procedure 2000-43, 2000-2 C.B. 404. This procedure prohibits *ex parte* communications by IRS employees that would appear to compromise the independence of an Appeals officer.

Through a series of questions and answers, the Commissioner explains which types of communications he regards as prohibited *ex parte* contacts. Rev. Proc. 2000-43, sec. 3, 2000-2 C.B. at 405. He begins with a general definition of *ex parte* communications as those taking place between an Appeals officer and another IRS employee in which the taxpayer does not have a reasonable "opportunity to participate." Id., Q&A-1 and Q&A-21, 2000-2 C.B. at 405, 408. He excludes the administrative file from the definition of an *ex parte* communication because that file explains what the dispute is about and establishes the jurisdiction of IRS Appeals. Id., Q&A-4, 2000-2 C.B. at 405. However, the procedure warns, communications with the "originating function" (IRS-speak for an employee whose initial determination the Appeals Office is reviewing) may only address "ministerial, administrative, or procedural matters and [may] not address the substance of the issues or positions taken in the

case," including the accuracy and relative importance of alleged facts in the case, and the "originating function's perception of the demeanor or credibility of the taxpayer or taxpayer's representative."  Id., Q&A-5, 2000-2 C.B. at 405-06.

There can't be any suspense in our holding on this point-- the cover letter sent to Talbott that accompanied the administrative file was precisely the sort of prohibited *ex parte* contact that the Commissioner and Congress wanted to ban.  It put the revenue officer's spin on what he thought of Wells and Industrial, and blatantly advocated a particular result.  In two recent cases, Drake v. Commissioner, 125 T.C. 201 (2005), and Moore v. Commissioner, T.C. Memo. 2006-171, we held that communications very similar to the cover letter in this case were likewise prohibited *ex parte* communications.  Drake featured a memorandum by an IRS employee telling the Appeals officer that he believed the taxpayer and her attorney had used the Bankruptcy Court to bypass a federal tax lien and get their hands on the proceeds from a sale of their encumbered property.  Drake, 125 T.C. at 203.  Moore featured two IRS employees who both tried to be helpful by suggesting that the Appeals officer consider a nominee theory and look at the taxpayer's "money stream."  Moore, supra.

The cover letter here is full of similarly "helpful" suggestions: telling Talbott he shouldn't consider a CDP hearing

for the previously filed lien, recommending that the government "secure any and all interest for all assets owned by the Corporation," and strongly suggesting the terms under which an offer-in-compromise would be accepted.

This needs to stop. Congress wanted to give taxpayers an opportunity to appeal their case to an IRS employee who would take a fresh look at the facts. *Ex parte* contacts not only undermine the impartiality of the officer hearing the appeal, but are especially pernicious because they are so hard to detect. Wells only discovered the cover letter sent to Talbott because, as a lawyer, he was savvy enough to ferret out its existence from a reference in the Appeals officer's case activity report.

The Commissioner contends that even if the cover letter were deemed a prohibited *ex parte* communication, it shouldn't matter since Talbott testified that the statements didn't influence him. This amounts to arguing that the cover letter was a harmless error, and the Commissioner is right that harmless error is generally no reason to remand an administrative agency's determination for what would be a pointless reconsideration. See, e.g., Keene v. Commissioner, 121 T.C. 8, 21 (2003) (Halpern, J., concurring); Kemper v. Commissioner, T.C. Memo. 2003-195. The Commissioner made a similar argument in Moore, stating that independent grounds would support an identical determination and therefore any prejudice from the *ex parte* communication was

irrelevant.  <u>Moore</u>, <u>supra</u>.  We disagreed with the Commissioner's reasoning then, and we still disagree now.

Revenue Procedure 2000-43 prohibits *ex parte* communications that *appear* to compromise the Appeals officer:  Actual influence isn't required, only a reasonable possibility that the prohibited communication may have compromised the Appeals officer's impartiality.  See <u>Drake</u>, 125 T.C. at 209-10.  We find that this standard is easily met here:  Our personal observation of Talbott's testimony--buttressed by a paper trail that shows an unusual haste to get the hearing over with and rule against Industrial--compels us to find that as a matter of fact he was influenced by the cover letter, leaving no doubt that his impartiality was compromised.  We therefore remand the case to the IRS for a new CDP hearing before a different Appeals officer who has not been exposed to the *ex parte* letter.  <u>Drake</u>, 125 T.C. at 210.[4]

---

[4] It is not entirely clear that this is the only possible remedy.  Another way to cure an *ex parte* communication might be to allow the offended party to have an opportunity to review and comment on it before the Appeals officer presiding over the remand.  This would put Industrial in the same position it would have been in if the revenue officer had incorporated his letter into the initial determination and made it part of the administrative file.  As we noted in <u>Moore v. Commissioner</u>, T.C. Memo. 2006-171, however, the revenue procedure itself doesn't address specific administrative remedies.  It also seems to contemplate oral *ex parte* communications--for example, meetings or conference calls--and not the sort of written communication that blindsided Industrial.  See Rev. Proc. 2000-43, sec. 3, Q&A-21, 2000-2 C.B. 404, 408.  Since the IRS hasn't spoken on this
(continued...)

2.  Hearing Location

Although that error is enough to force a remand, Industrial also argues for a remand to an IRS office less than two time zones away.  It claims that the Commissioner also abused his discretion in deciding to hold the CDP hearing in Oklahoma City instead of somewhere closer to Santa Monica, where Industrial has its principal place of business.  The applicable regulation is clear that a face-to-face CDP hearing is not required by the Code.  Sec. 301.6330-1(d)(2), Q&A-D6, Proced. & Admin. Regs.  We also agreed in Katz v. Commissioner, 115 T.C. 329, 337-38 (2000), that a CDP hearing via telephone satisfies the Code's requirements when it is an honest attempt to accommodate a taxpayer's preference.  But the regulation does command the Commissioner, if a taxpayer wants a face-to-face hearing, to offer him "a hearing at the Appeals office closest to * * * [his] principal place of business."  Sec. 301.6330-1(d)(2), Q&A-D7, Proced. & Admin. Regs.[5]

_____

[4](...continued)
particular issue, we can leave any analysis of a different approach to another day.  At least until then, we must continue to follow our decision in Drake.

[5] Section 301.6330-1, Proced. & Admin. Regs., has since been changed to enable the IRS in some situations to avoid having to schedule face-to-face hearings at the closest Appeals Office.  See T.D. 9291, 2006-46 I.R.B. 887.  However, those changes do not apply to this case.

The Commissioner claims that this means the taxpayer must request a face-to-face hearing in writing, at which point the case would be transferred to the Appeals Office closest to the taxpayer's principal place of business.  We addressed this very issue in Parker v. Commissioner, T.C. Memo. 2004-226, where we held that a written CDP hearing request was itself a request for a face-to-face meeting in the nearest Appeals Office.  We stressed that any contrary rule would turn Form 12153 (the official IRS CDP-hearing-request form) into a "trap for the unwary" since there is nothing to "[inform] taxpayers of their right * * * to request a hearing at an Appeals Office."  Id.

Under Parker, Wells impliedly requested a face-to-face CDP hearing for Industrial when he filled out and returned Form 12153.  Since Industrial never subsequently waived its right to a hearing at the closest Appeals Office, the Commissioner erred as a matter of law, and so also abused his discretion, in sending Industrial's case to Oklahoma City rather than to the Appeals Office closest to Santa Monica.[6]

---

[6] As Wells persuasively argued, this error might well not be harmless.  Wells was looking to hire outside counsel, but the time and expense of moving counsel between California and Oklahoma made it prohibitively costly.  Even if Wells represented Industrial himself, he has a hearing problem that makes telephone conversations difficult--he therefore requires a face-to-face hearing to effectively represent Industrial.  And whether or not the error is harmless, it is an error; and procedural flaws should be fixed on a remand for a new hearing.  Kerner v. Celebrezze, 340 F.2d 736, 740 (2d Cir. 1965).

3.  Time of the Hearing

Industrial claims that Talbott's unilateral scheduling of a telephone conference was a third abuse of discretion.  However, Industrial didn't raise this issue in its petition to this Court and, under Rule 331(b)(4), the issue is therefore deemed to be conceded.  Industrial did raise a related issue which we feel should be mentioned: it argued that the Commissioner erred by not permitting sufficient time to present evidence in support of Industrial's offer-in-compromise.  This is not a problem that lends itself to bright lines, and will presumably be fixed on remand.  We merely note that eighteen business days from the date of initial contact hardly seems an adequate amount of time for a corporation to provide all relevant documentation, and putting Industrial into default when Wells left word that he was under subpoena to appear in court is inexplicable.

4.  Evidence of Industrial's Settlement Agreement

The final argument that we discuss is Industrial's contention that Talbott failed to consider evidence of the settlement between Industrial and the IRS.  Talbott refused to review the documents because he regarded them as an attempt by Industrial to challenge its underlying tax liability.  But it wasn't:  When a taxpayer argues that the assessed amount doesn't accurately reflect a settlement, judgment, or decision, he isn't challenging his liability--he's challenging the accuracy of the

assessment-recording process.  To hold to the contrary would be absurd.  Imagine a clerical error at the IRS that causes an assessment of $1 million against a taxpayer who has a Tax Court decision saying that he owes $1,000.  Not allowing him to point that out in a CDP hearing would be tantamount to saying that IRS clerical errors trump our decisions.  We won't do so.

But in this case, we can assuage Industrial's concern.  As later explained by Talbott's manager, and confirmed by our own review, the IRS's records accurately accounted for the reduced deficiencies that Industrial won through negotiations.  As is customary at the IRS, these reductions were noted as abatements of the original assessments, together with corresponding abatements of the interest and penalties to reflect the settlement.

5.  Reasonable Litigation Costs

Industrial also asks for an award of reasonable litigation costs under section 7430.  However, section 7430(a) allows us to award costs only to a "prevailing party," and Rule 231(a)(2)(A) provides that a taxpayer may file a motion seeking costs within thirty days after service of the opinion determining the issues in the case.  We are remanding this case, not deciding the case on the merits and in Industrial's favor.  Its request is therefore premature.  See Drake v. Commissioner, T.C. Memo. 2006-151.

Conclusion

Because there was an impermissible *ex parte* communication, we remand this case to the IRS Appeals Office closest to Santa Monica, California, for a new CDP hearing with an impartial Appeals officer. This hearing should be conducted face-to-face unless Industrial waives its right by agreeing to a hearing by telephone or through the mail. The cover letter which we determined was an *ex parte* communication--and this opinion with its lengthy quotation from it--should be removed from Industrial's administrative file and not shown to the Appeals officer conducting the hearing on remand.

An appropriate order will

be issued.