T.C. Memo. 2019-116

UNITED STATES TAX COURT

JASON STEWART AND KRISTY STEWART, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15734-18L.            Filed September 10, 2019.

<u>Eric William Johnson</u>, for petitioners.

<u>Paul A. George</u>, for respondent.

MEMORANDUM OPINION

KERRIGAN, <u>Judge</u>:  The petition in this case was filed in response to two

Notices of Determination Concerning Collection Action(s) Under Section 6320

and/or 6330 (notices of determination) dated July 19, 2018, that were issued to

each petitioner by the Internal Revenue Service (IRS or respondent) Office of

Appeals.  The notices of determination sustained the filing of a notice of Federal

[*2] tax lien (NFTL) and a proposed levy regarding petitioners' unpaid income tax liabilities for 2015 and 2016 (years in issue).[1] The NFTL pertains to year 2015, and the proposed levy pertains to years 2015 and 2016.

The issue for consideration is whether the IRS settlement officer improperly engaged in an ex parte communication with the IRS revenue officer during petitioners' collection due process (CDP) proceeding, committing an abuse of discretion. Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended, in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

This case was fully stipulated pursuant to Rule 122. The stipulated facts are incorporated in our findings by this reference. Petitioners resided in Minnesota when they timely filed their petition.

Petitioners reported adjusted income of $664,234 and $448,154 for 2015 and 2016, respectively. For 2015 they made no estimated tax payments and no payment when their income tax return was filed. For 2016 they made one estimated tax payment and no payment when their return was filed.

---

[1]The parties agree that the notices of determination contain typographical errors that incorrectly state that the NFTL pertains to years 2015 and 2016 and the proposed levy pertains only to year 2015.

[*3]   On May 23, 2017, respondent issued to petitioners a notice of NFTL filing for 2015.  On June 20, 2017, petitioners timely filed a CDP hearing request on which they checked the boxes for installment agreement and not being able to pay the balance.  On July 28, 2017, Revenue Officer J. Wagner (RO Wagner) visited petitioners' representative, E. Johnson, who also represents petitioners before this Court, as a part of his initial collection investigation.  Following the meeting RO Wagner entered notes in the Information Collection System (ICS) history, which is a part of the administrative file kept by respondent.

RO Wagner's notes state that Mr. Johnson was "uncooperative" and "unwilling to provide financial information" on petitioners' behalf.  RO Wagner's notes also state that Mr. Johnson concluded the visit by informing him "we're done" and that Mr. Johnson directed RO Wagner out of his office.

Also on July 28, 2017, RO Wagner sent Mr. Johnson a followup letter containing statements consistent with RO Wagner's ICS history notes of the meeting from earlier that day.  This letter stated:  "You refused to provide any collection information and stated it would be provided directly to the office appeals.  You then brusquely directed me to leave your office."

Respondent issued to each petitioner a Notice of Intent to Levy and Your Right to a Hearing for the years in issue dated July 28, 2017.  On or around July

[*4] 31, 2017, petitioners timely filed a second CDP hearing request. Petitioners' CDP hearing requests were assigned to Settlement Officer G. Wert (SO Wert) in the IRS Appeals Office. On December 19, 2017, SO Wert conducted petitioners' CDP hearing with Mr. Johnson. Mr. Johnson and SO Wert discussed collection alternatives, lien withdrawal and discharge, and the possibility of placing petitioners in currently noncollectible (CNC) status.

On January 18, 2018, SO Wert and Mr. Johnson discussed the requirements for CNC status based on hardship. SO Wert requested from Mr. Johnson the financial information from petitioners needed for IRS Collections to investigate and verify that financial information before CNC status could be granted. Mr. Johnson provided the requested financial information, a Collection Information Statement (CIS), to SO Wert. Mr. Johnson requested that petitioners be placed in CNC status for six months, as they were pursuing potential litigation, had fluctuating income, and could not currently pay their back taxes.

On March 1, 2018, the CIS was sent to RO Wagner. On April 2, 2018, RO Wagner completed his investigation of petitioners' CIS, and those results were shared with Mr. Johnson and petitioners. RO Wagner determined that petitioners could make monthly installment payments and were ineligible for CNC status.

[*5]   Petitioners were given until May 3, 2018, to respond to or rebut RO Wagner's analysis.  On May 3, 2018, Mr. Johnson communicated to SO Wert that he wanted petitioners to be placed in CNC status and that they could not make monthly installment payments.  He requested that the Appeals Office proceed with a notice of determination.

SO Wert relied on the information and documents in respondent's administrative file regarding petitioners to make his determinations.  The ICS history, containing RO Wagner's comments regarding his visit with Mr. Johnson on July 28, 2017, was a part of this administrative file.

SO Wert concluded that all legal and procedural requirements had been met and the collection actions taken or proposed were appropriate under the circumstances.  On July 19, 2018, respondent issued to petitioners the notices of determination sustaining the NFTL and the proposed levy for the years in issue.  Petitioners' petition raises the issue that SO Wert abused his discretion by not allowing petitioners temporary CNC status.[2]  Their amended petition raises the issue of an ex parte communication between RO Wagner and SO Wert.

---

[2]Petitioners are not contesting the determination that they were not entitled to CNC status.

**[\*6]**                                   Discussion

The Federal Government obtains a tax lien against the property and rights to property, whether real or personal, of a taxpayer with an outstanding tax liability whenever a demand for payment has been made and the taxpayer neglects or refuses to pay.  Sec. 6321; Iannone v. Commissioner, 122 T.C. 287, 293 (2004).  Section 6320(a)(1) requires the Secretary to provide written notice to a taxpayer when the Secretary has filed an NFTL against the taxpayer's property and property rights.  See also sec. 6323.  The Secretary must also notify the taxpayer of his or her right to a CDP hearing.  Sec. 6320(a)(3).

Section 6331(a) authorizes the Secretary to levy upon the property and property rights of a taxpayer who fails to pay a tax within 10 days after notice and demand.  Before the Secretary may levy upon the taxpayer's property the Secretary must notify the taxpayer of the Secretary's intention to levy.  Sec. 6331(d)(1).  The Secretary must also notify the taxpayer of his or her right to a CDP hearing.  Sec. 6330(a)(1).

If the taxpayer requests a CDP hearing, the hearing is conducted by the Appeals Office.  Secs. 6320(b)(1), 6330(b)(1).  At the hearing the taxpayer may raise any relevant issue relating to the unpaid tax or the proposed collection action.  Secs. 6320(c), 6330(c)(2)(A).  The taxpayer may challenge the existence or the

**[\*7]** amount of the underlying tax liability for any period only if he or she did not receive a notice of deficiency or did not otherwise have an opportunity to dispute the liability. Sec. 6330(c)(2)(B); Sego v. Commissioner, 114 T.C. 604, 609 (2000).

Petitioners did not challenge the underlying liabilities in this case. Consequently, we review the settlement officer's determination for abuse of discretion. Goza v. Commissioner, 114 T.C. 176, 182 (2000). In determining whether an abuse of discretion exists, we consider whether the determination was arbitrary, capricious, or without sound basis in fact or law. See Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006).

Following the hearing the settlement officer must determine whether proceeding with the proposed collection action is appropriate. In making that determination the settlement officer is required to take into consideration: (1) whether the requirements of any applicable law or administrative procedure have been met, (2) any relevant issues raised by the taxpayer, and (3) whether the proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the taxpayer that the collection action be no more intrusive than necessary. Sec. 6330(c)(3); see also Lunsford v. Commissioner, 117

**[*8]** T.C. 183, 184 (2001). Once the settlement officer makes a determination, the taxpayer may appeal it to this Court. Secs. 6320(c), 6330(d)(1).

Petitioners contend that the ICS history transmitted to SO Wert as part of the administrative file was an ex parte communication. They contend that they were not aware that RO Wagner's "gratuitous characterization" of petitioner's counsel was part of the administrative record. Petitioners request that their case be remanded to the Appeals Office and assigned to a different settlement officer who has not been exposed to the alleged ex parte communication. Respondent contends that the alleged ex parte communication was a permissible transmittal of petitioners' administrative file between the revenue officer and the settlement officer during the CDP process.

In the IRS Restructuring and Reform Act of 1998, Pub. L. No. 105-206, sec. 1001(a)(4), 112 Stat. at 689, Congress directed the Commissioner to ensure that the Appeals Office is independent and to develop a plan to prohibit ex parte communications between settlement officers and other IRS employees so that the independence of the Appeals Office would not be compromised. In response the Commissioner issued Rev. Proc. 2000-43, 2000-2 C.B. 404, amplified, modified, and superseded by Rev. Proc. 2012-18, 2012-10 I.R.B. 455. Rev. Proc. 2012-18, sec. 2.01(1), 2012-10 I.R.B. at 456, defines ex parte communication as "a

**[*9]** communication that takes place between any Appeals employee * * * and employees of other IRS functions, without the taxpayer * * * [or her] representative being given an opportunity to participate in the communication." The term "communication" includes oral and written communications. Id.

Generally, the administrative file transmitted to the Appeals Office by the revenue officer is not considered to be an ex parte communication. See id. sec. 2.03(4), 2012-10 I.R.B. at 459. Rev. Proc. 2012-18, sec. 2.03(4)(d), 2012-10 I.R.B. at 460, further states:

> The originating function, however, shall refrain from placing in the administrative file any notes, memoranda, or other documents that normally would not be included in the administrative file in the ordinary course of developing the case if the reason for including this material in the administrative file is to attempt to influence Appeals' decision-making process. For example, the originating function should not include gratuitous comments in the case history, a memo to the file, or a transmittal document * * * if the substance of the comments would be prohibited if they were communicated to Appeals separate and apart from the administrative file. In contrast, it is permissible to contemporaneously include statements or documents that are pertinent to the originating function's consideration of the case in the administrative file even if the substance of those comments, statements, or documents would be prohibited if they were communicated to Appeals separate and apart from the administrative file.

RO Wagner's notes in the ICS history in petitioners' administrative file were made pursuant to his duties as a revenue officer, as directed by the Internal

[*10] Revenue Manual (IRM).  See IRM 5.1.10.3(9) (Feb. 26, 2016) (directing the revenue officer to document the case history).  RO Wagner recorded the notes in the ICS history the same day that he spoke with petitioners' representative.

We have previously held that there was an abuse of discretion when Appeals' independence was compromised by prohibited ex parte communications.  See, e.g., Drake v. Commissioner, 125 T.C. 201, 210 (2005), supplemented by T.C. Memo. 2006-151; Indus. Inv'rs v. Commissioner, T.C. Memo. 2007-93; Moore v. Commissioner, T.C. Memo. 2006-171.  These cases were remanded to the Appeals Office after improper ex parte communications occurred concerning the merits of the case or the character of the taxpayer.  See Drake v. Commissioner, 125 T.C. at 210; Indus. Inv'rs v. Commissioner, slip op. at 11; Moore v. Commissioner, slip op. at 10-11.

The communications in those cases were materially different from the communications at issue here.  Petitioners' administrative file, which included RO Wagner's notes, was transmitted and reviewed by SO Wert.  However, RO Wagner's notes did not address the substance of the issues or suggest any positions to be taken in petitioners' CDP proceedings.

Ex parte communications are allowed when the communications involve matters that are ministerial, administrative, or procedural and do not address the

[*11] substance of the issues or positions taken in the case.  See Rev. Proc. 2012-18, sec. 2.02(6), 2012-10 I.R.B. at 458.  RO Wagner's notes in petitioners' administrative file were procedural.  While RO Wagner did make comments regarding Mr. Johnson's generally "uncooperative" nature, these comments were made contemporaneously as a part of his job function as a revenue officer.  See id. sec. 2.03(4)(d), 2012-10 I.R.B. at 460.

We find that the communication in respondent's administrative file regarding petitioners was not a prohibited ex parte communication.  Accordingly, we conclude there was no abuse of discretion and SO Wert appropriately sustained the NFTL and the proposed levy for the years in issue.

Any contention we have not addressed is irrelevant, moot, or meritless.

To reflect the foregoing,

Decision will be entered for respondent.