# United States Tax Court

T.C. Memo. 2026-3

TODD A. CRAWFORD,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 8081-23L.                    Filed January 7, 2026.

————

*Gary R. Dettloff*, for petitioner.

*Rebecca M. Clark* and *Stephanie A. Kingsley*, for respondent.

## MEMORANDUM OPINION

LANDY, *Judge*: In this collection due process (CDP) case, the Internal Revenue Service (IRS) issued to petitioner, Todd A. Crawford, a notice of the filing of a Notice of Federal Tax Lien (NFTL) seeking to collect unpaid section 6672[1] trust fund recovery penalty (TFRP) liabilities for the tax periods ending September 30 and December 31, 2018.[2] Mr. Crawford seeks review, pursuant to sections 6320 and 6330, of an IRS Independent Office of Appeals (Appeals Office) determination to uphold the collection action. This case is before the Court on the

_____

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

[2] On June 26, 2025, the Commissioner filed a Motion to Dismiss on Ground of Mootness as to the tax period ending December 31, 2018, on the basis that the liability for this tax period was satisfied. We granted that motion on July 16, 2025. Therefore, the tax period ending September 30, 2018, is the sole period at issue.

[*2] Commissioner's Motion for Summary Judgment (Motion), filed July 10, 2025, and as supplemented July 24, 2025. The Commissioner contends that there are no disputed issues of material fact and that his determination to sustain the collection action was proper as a matter of law for the tax period ending September 30, 2018 (period at issue). The sole issue for decision is whether the Appeals Office abused its discretion in rejecting Mr. Crawford's collection alternative. Finding no abuse of discretion, we will grant the Commissioner's Motion.

## *Background*

The following facts are derived from the Petition, the parties' Motion papers and the Exhibits attached thereto, the Administrative Record, and the First Supplemental Administrative Record. *See* Rules 93, 121(c). This background is stated solely for the purpose of resolving the present Motion and not as findings of fact in this case. *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994).

## I.    *Mr. Crawford's Tax Liability*

Mr. Crawford is the sole owner and officer of Crawford Pile Driving, LLC (Company), an entity formed on November 3, 2010. The Company late filed its Form 941, Employer's Quarterly Federal Tax Return, for the period at issue on May 24, 2019, and it failed to fully pay the employment tax reported. The unpaid employment tax liability was assessed on October 7, 2019. Revenue Officer (RO) C. Smith was assigned to collect the Company's outstanding employment tax liability for the period at issue.

To assist in his review, RO Smith summoned the Company's bank records on September 24, 2020, and the summoned records were received on November 13, 2020. The summoned records reflected that Mr. Crawford had signatory authority on the Company's bank accounts. RO Smith also noted that the Michigan state annual report for the period at issue was signed by Mr. Crawford.

To further investigate whether Mr. Crawford was a responsible person for the unpaid trust fund tax related to the Company's unpaid employment tax, RO Smith scheduled a trust fund interview for February 19, 2020, with Mr. Crawford, which he did not attend. After review of state corporate records, the Company's Form 433–B, Collection Information Statement for Businesses, executed August 3, 2018, the Company's filed tax returns, and the summoned bank records, RO Smith

**[\*3]** determined that Mr. Crawford was responsible for collecting and paying over the trust fund tax to the IRS.

On November 13, 2020, RO Smith prepared and forwarded Form 4183, Recommendation re: Trust Fund Recovery Penalty Assessment, to his manager recommending that Mr. Crawford be assessed the TFRP for the period at issue. The same day, RO Smith's manager approved the assessment of the TFRP. Letter 1153 and Form 2751, Proposed Assessment of Trust Fund Recovery Penalty, were mailed on November 13, 2020, by certified mail to Mr. Crawford at his last known address in Bloomfield Hills, Michigan. On December 16, 2020, RO Smith received notification via U.S. Postal Service (USPS) Form 3811 that Letter 1153 had been delivered to Mr. Crawford on November 24, 2020. Mr. Crawford neither disputed receipt of Letter 1153 nor requested a hearing with the Appeals Office. The IRS assessed the TFRP for the period at issue on March 8, 2021. As of June 17, 2025, Mr. Crawford's TFRP liability for the period at issue was $28,977.

II.     *Issuance of the Lien Notice and the CDP Hearing Request*

On May 27, 2021, seeking to collect the unpaid TFRP liability, the IRS mailed Mr. Crawford Letter 3172, Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320 (Lien Notice). Mr. Crawford retained Gary R. Dettloff to represent him before the IRS. On a timely filed Form 12153, Request for a Collection Due Process or Equivalent Hearing (CDP Hearing Request Form), faxed June 18, 2021, Mr. Crawford requested a CDP hearing regarding the NFTL filing and requested collection alternatives (i.e., an installment agreement,[3] an offer-in-compromise (OIC), and currently not collectible status). In a document attached to the CDP Hearing Request Form, Mr. Crawford stated that he is "unable to pay [the TFRP] taxes instantly without inflicting undue hardship upon [himself] or other innocent parties. [He] should qualify for collection alternatives . . . ." On his CDP Hearing Request Form, Mr. Crawford disputed neither the underlying liability nor his receipt of Letter 1153.

A.     *Submission of the OIC*

On June 21, 2021, the IRS received from Mr. Crawford: Form 656, Offer in Compromise, offering $100 to settle his unpaid TFRP liability for the period at issue and other non-CDP liabilities; Form 433–A (OIC),

---

[3] Mr. Crawford did not formally propose an installment agreement during the initial or supplemental CDP hearing.

**[\*4]** Collection Information Statement for Wage Earners and Self-Employed Individuals; and Form 433–A, Collection Information Statement for Wage Earners and Self-Employed Individuals. On Form 656 Mr. Crawford stated doubt as to collectibility as his underlying reason for the OIC. The OIC was forwarded to the IRS's Centralized Offer in Compromise unit for processing. On April 12, 2022, the IRS preliminarily rejected Mr. Crawford's OIC because it determined that his reasonable collection potential (RCP) was $1,003,664, he had the ability to fully pay his liability within the time provided by law, and no special circumstances existed to warrant acceptance of the OIC.

B.    *Initial CDP Hearing*

This CDP case was reassigned several times between July 6, 2021, and October 19, 2022, before settlement officer (SO) L. Moore was assigned the case and spoke with Mr. Dettloff on October 25, 2022. SO Moore and Mr. Dettloff scheduled a telephone conference for November 17, 2022, to discuss Mr. Crawford's OIC. Before the November 17 telephone conference, SO Moore noted a substantial discrepancy between Mr. Crawford's monthly income as reported on Forms 433–A and 433–A (OIC), and the $17,333 that the IRS determined as Mr. Crawford's monthly household income. By letter dated October 28, 2022, SO Moore notified Mr. Crawford that she required additional information regarding his income received and net equity in assets to determine whether his OIC could be accepted.[4]

On November 17, 2022, SO Moore received more documents from Mr. Dettloff, including a purported copy of Mr. Crawford's joint 2021 tax return showing an overpayment. Not included in these documents was the requested formal appraisal of Mr. Crawford's home to assist the IRS in evaluating the net equity in Mr. Crawford's personal residence. That same day, SO Moore and Mr. Dettloff held a telephone conference. During the conference SO Moore advised Mr. Dettloff that she required more information to support an OIC from Mr. Crawford, his OIC of only $100 would not be accepted, and she would consider another OIC if proposed. Mr. Dettloff told SO Moore that Mr. Crawford did not actually receive the $208,000 reported on his 2021 Form W–2, Wage and Tax Statement, because he invested roughly half of his income back into the Company. SO Moore advised Mr. Dettloff that it would be difficult to

---

[4] Mr. Dettloff disputed the IRS's calculation of the equity in Mr. Crawford's personal residence during the CDP hearing, but he did not raise the issue in the Petition or the Objection to the Motion for Summary Judgment filed August 1, 2025 (Objection).

[*5] refute the Form W–2 that he willingly provided, but it would be possible if she received sufficient proof. Mr. Dettloff asserted that he could easily provide proof that Mr. Crawford deposited substantial funds back into the Company.

On December 8, 2022, this case was reassigned to SO C. Megyesi. Mr. Dettloff submitted a QuickBooks ledger to SO Megyesi to support Mr. Crawford's position that he reinvested roughly half of his 2021 Form W–2 income into the Company. On January 12, 2023, during a telephone conference with Mr. Dettloff, SO Megyesi requested additional information regarding Mr. Crawford's bank accounts and income to support Mr. Crawford's claim that he reinvested a portion of his 2021 income into the Company. On February 9, 2023, Mr. Dettloff faxed a cover letter to SO Megyesi indicating that he was sending bank statements to verify Mr. Crawford's income, but no bank statements were attached. SO Megyesi left a voicemail that day notifying Mr. Dettloff that he did not receive the bank records and that he had approximately 30 days before he had to issue a determination letter due to the deadline imposed by the Tax Increase Prevention and Reconciliation Act of 2005, Pub. L. No. 109-222, 120 Stat. 345 (2006).

On February 24, 2023, SO Megyesi advised Mr. Dettloff that if he did not receive sufficient proof to support Mr. Crawford's income as reported on Form 433–A (OIC), then he would be unable to approve the OIC. That same day, Mr. Dettloff sent SO Megyesi bank statements for 11 of 12 months for 2021. On March 9, 13, and 15, 2023, SO Megyesi received faxes from Mr. Dettloff with additional financial information. In those faxes was a ledger of all checks written to Mr. Crawford from the Company, evidencing income of $137,442. Although Mr. Crawford submitted no evidence that he reinvested part of his income in the Company, SO Megyesi used the $137,442 figure to recalculate Mr. Crawford's RCP. SO Megyesi determined that Mr. Crawford's RCP was $568,280 and that Mr. Crawford could make minimum monthly payments of $4,334 towards the tax liability.

By letter dated March 17, 2023, SO Megyesi advised Mr. Crawford that the IRS could not accept the OIC based on the current information before him and that Mr. Crawford had 14 additional days to provide any information for SO Megyesi's consideration. Mr. Dettloff called SO Megyesi on March 31, 2023, to ask for more time to submit documentation. SO Megyesi agreed to give Mr. Crawford 14 more days, but he never received any additional information from Mr. Dettloff.

**[\*6]** III.    *Tax Court Proceedings*

On April 24, 2023, the IRS issued a Notice of Determination Concerning Collection Actions Under Sections 6320 or 6330 of the Internal Revenue Code (Notice of Determination) to Mr. Crawford sustaining the NFTL filing to collect the unpaid TFRP liability for the period at issue. On May 22, 2023, Mr. Crawford, while residing in Michigan, timely petitioned this Court for review of the Notice of Determination.[5] Mr. Crawford asserted in his Petition that the Appeals Office erred and abused its discretion because (1) the IRS improperly rejected his OIC; (2) the IRS's "extreme and erroneous delay in processing [Mr. Crawford's OIC]" caused him to reject the OIC instead of fully considering "fair alternatives such as corrected assessment amounts, applied credits, amended offer amounts, corrected income calculations and actual ability to pay, contrary to the Mission Statement of Appeals"; and (3) the IRS failed to account for wage income actually paid to Mr. Crawford in determining his ability to pay and qualification for other collection alternatives.

On February 2, 2024, the Commissioner filed a Motion for Summary Judgment contending that he was entitled to summary adjudication in his favor on all issues raised. By Order served December 18, 2024, the Court denied the Commissioner's Motion for Summary Judgment because he failed to demonstrate compliance with the verification requirements of section 6330(c), specifically whether the IRS properly complied with the section 6751(b) requirements to assess the TFRP liability. The Court remanded this case for supplemental proceedings.

IV.    *Supplemental CDP Hearing*

Upon remand Mr. Crawford's case was reassigned to SO Megyesi to determine whether the IRS properly complied with section 6330(c)(1) with respect to section 6751(b) in sustaining the TFRP assessment against Mr. Crawford. SO Megyesi confirmed that he had a copy of the Form 2749, Request for Trust Fund Recovery Penalty Assessment(s); a copy of Letter 1153, dated November 13, 2020, sent to Mr. Crawford by certified mail at his last known address and delivered on November 24, 2020; a USPS Form 3800, Certified Mail Receipt, indicating that the Letter 1153 was sent by certified mail; and a Form 4183 approved by

---

[5] Absent stipulation to the contrary, this case is appealable to the U.S. Court of Appeals for the Sixth Circuit. *See* § 7482(b)(1)(G)(i), (2).

**[\*7]** RO Smith's manager. SO Megyesi further reviewed RO Smith's case notes and confirmed that RO Smith received the return receipt that Letter 1153 was delivered on November 24, 2020. Accordingly, SO Megyesi determined that the assessment of the TFRP was valid. SO Megyesi held a telephone conference on February 20, 2025, informing Mr. Dettloff that he had secured the TFRP administrative files and that the TFRP assessment was valid. Mr. Dettloff did not submit any additional financial information to SO Megyesi for consideration.

On March 10, 2025, SO A. Hendren was assigned to the case to finalize the supplemental CDP hearing. SO Hendren left a message for Mr. Dettloff on March 20, 2025, advising him that she was finalizing the remanded case and that she was available if he had any questions. On April 29, 2025, the IRS issued to Mr. Crawford the Supplemental Notice of Determination Concerning IRS Collection Actions under Internal Revenue Code Sections 6320 and 6330, determining that the TFRP was validly assessed and sustaining the NFTL filing. The Supplemental Notice incorporates the Notice of Determination for further explanation.

V.   *Motion for Summary Judgment*

The Commissioner filed his Motion on July 10, 2025, as supplemented July 24, 2025. Mr. Crawford filed an Objection on August 1, 2025. Mr. Crawford contends in his Objection that (1) SO Megyesi did not properly consider Mr. Crawford's health conditions when determining his ability to pay;[6] (2) SO Megyesi's determination was inconsistent with the related cases before him because he did not accept Mr. Crawford's QuickBooks submission as sufficient evidence; (3) he did not receive Letter 1153; (4) the IRS's multiple delays between SO assignments "was an unnecessary delay, and once again worked to thwart [Mr. Crawford]'s quest for Due Process"; and (5) the SOs did not properly consider collection alternatives.

---

[6] Mr. Crawford raised this argument for the first time in his Objection. We thus deem it conceded. *See* Rule 331(b)(4).

[*8]                              *Discussion*

I.     *General Principles*

       A.     *Scope of Review*

       Summary judgment serves to "expedite litigation and avoid unnecessary and expensive trials." *Fla. Peach Corp. v. Commissioner*, 90 T.C. 678, 681 (1988). We shall grant summary judgment when there is no genuine dispute of material fact and a decision may be rendered as a matter of law. *See* Rule 121(a)(2); *see also Sundstrand Corp. v. Commissioner*, 98 T.C. at 520. In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in a light most favorable to the nonmoving party. *Sundstrand Corp.*, 98 T.C. at 520. The nonmoving party may not rest upon mere allegations or denials in its pleadings and must set forth specific facts showing there is a genuine dispute for trial. Rule 121(d); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). On the basis of the record before the Court, we find that this case is appropriate for summary adjudication.

       B.     *Administrative Record*

       The parties did not file a stipulated administrative record in this case. On January 30, 2024, the Commissioner, in accordance with Rule 93(a), filed the Administrative Record and Certificate as to the Genuineness of the Administrative Record. The Certificate of Genuineness as to the Administrative Record is signed by SO Megyesi. Mr. Crawford has not maintained that the Administrative Record is incomplete or should be supplemented, nor has he filed a motion to complete or supplement the Administrative Record pursuant to Rule 93(b). Therefore, we accept the Administrative Record filed by the Commissioner.

       On June 25, 2025, the parties jointly filed the First Supplemental Administrative Record, incorporating the documents from Mr. Crawford's supplemental CDP hearing.

       C.     *Standard of Review*

       Section 6330 provides that during a CDP hearing a taxpayer may raise relevant issues, e.g., spousal defenses, the appropriateness of the proposed collection action, and possible collection alternatives. *See* § 6330(c)(2)(A). A taxpayer may dispute the underlying liability during

**[\*9]** the CDP hearing if he did not receive a Notice of Deficiency or otherwise have a prior opportunity to dispute the liability. *See* § 6330(c)(2)(B). The Court cannot consider issues that were not raised during a CDP hearing. *See Giamelli v. Commissioner*, 129 T.C. 107, 114 (2007). When this Court remands a case to the Appeals Office, the second hearing supplements the taxpayer's original CDP hearing and is not a new hearing in and of itself. *Kelby v. Commissioner*, 130 T.C. 79, 86 (2008) (citing *Drake v. Commissioner*, T.C. Memo. 2006-151, *supplementing* 125 T.C. 201 (2005), *aff'd*, 511 F.3d 65 (1st Cir. 2007)). However, where, as here, a Supplemental Notice of Determination incorporates by reference the contents of the initial Notice of Determination, we look to the initial Notice of Determination and related documents as well. *See Palli v. Commissioner*, T.C. Memo. 2025-54, at \*12.

Sections 6320(c) and 6330(d)(1) do not prescribe the standard of review that this Court should apply in reviewing an IRS administrative determination in a CDP case. Instead, our caselaw sets forth the appropriate standards. Where the validity of a taxpayer's underlying tax liability is properly at issue, we review the determination de novo. *Sego v. Commissioner*, 114 T.C. 604, 609–10 (2000); *Goza v. Commissioner*, 114 T.C. 176, 181–82 (2000). When the taxpayer's underlying liability is not properly before us, we review the IRS's determination for abuse of discretion. *Goza*, 114 T.C. at 182. Abuse of discretion exists when a determination is "arbitrary, capricious, or without sound basis in fact or law." *Murphy v. Commissioner*, 125 T.C. 301, 320 (2005), *aff'd*, 469 F.3d 27 (1st Cir. 2006).

II.   *Challenge to the Underlying Liability*

The liability in this case involves a TFRP. TFRPs are "assessable penalties" and thus are not subject to deficiency procedures. *See Chadwick v. Commissioner*, 154 T.C. 84, 91 (2020). Before TFRPs can be assessed, the Commissioner must generally notify the taxpayer in writing by mail to the taxpayer's last known address advising that TFRPs will be assessed. § 6672(b)(1); *Mason v. Commissioner*, 132 T.C. 301, 322 (2009). Letter 1153 satisfies this preliminary notice requirement. *See Mason*, 132 T.C. at 317–18, 322. The Commissioner's issuance of Letter 1153 by certified mail to Mr. Crawford at his last known address satisfies the section 6672 notice requirement. Therefore, the assessment of the TFRP against Mr. Crawford following the mailing of Letter 1153 was valid, and we may consider the merits of the TFRP assessment.

[*10] A taxpayer cannot challenge an underlying liability in a CDP hearing, and this Court cannot review that liability, if the taxpayer had an earlier opportunity to dispute the assessment of that liability. § 6330(c)(2)(B); *Mason*, 132 T.C. at 317. A Letter 1153 provides a taxpayer with an administrative means for protesting a proposed assessment of TFRPs with the Commissioner such that it constitutes an opportunity for the taxpayer to dispute the underlying tax liability for purposes of section 6330(c)(2)(B). *See Mason*, 132 T.C. at 317–18. A Letter 1153, however, that is neither received nor deliberately refused by a taxpayer does not constitute an opportunity to dispute the taxpayer's liability. *See id.* at 318. A taxpayer can dispute his liability for a TFRP by filing an appeal with the IRS when he receives a Letter 1153. *Id.* Failure to dispute a properly mailed Letter 1153 precludes a taxpayer from challenging the TFRP liability in a CDP hearing. *See Chavis v. Commissioner*, 158 T.C. 175, 181–82 (2022).

On November 13, 2020, the IRS sent Letter 1153 by certified mail to Mr. Crawford's last known address. Letter 1153 informed Mr. Crawford of his right to appeal the proposed TFRP assessment and outlined the steps he needed to take to do so. Mr. Crawford asserts for the first time in his Objection that he did not receive Letter 1153. To support his claim, Mr. Crawford maintains that "the ordinary and usual means by which such delivery is confirmed by USPS does not appear in this case." Mr. Crawford offers no further evidence for consideration. After reviewing the USPS Forms 3800 and 3811 and RO Smith's case notes verifying that the RO received a return receipt confirming delivery of Letter 1153, we determine that there is no evidence that Mr. Crawford did not receive Letter 1153, the IRS properly mailed Letter 1153, and Mr. Crawford did, in fact, receive Letter 1153. Consequently, Mr. Crawford waived his opportunity to challenge the underlying liability when he did not protest the proposed TFRP. *Id.*

Because Mr. Crawford had an opportunity to dispute his TFRP liability through the processes outlined in Letter 1153 and he failed to do so, Mr. Crawford was not entitled to challenge his underlying liability at the CDP hearing, nor is he entitled to advance such a challenge now. *See Chadwick*, 154 T.C. at 89–91. Accordingly, we review the SOs' determinations for abuse of discretion only.

III.   *Abuse of Discretion*

In determining whether the Appeals Office abused its discretion, we consider whether the SOs (1) properly verified that the requirements

[*11] of applicable law or administrative procedure have been met, (2) considered any relevant issues Mr. Crawford raised, and (3) weighed "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of [Mr. Crawford] that any collection action be no more intrusive than necessary." § 6330(c)(3). Our review of the record establishes that the SOs satisfied all three requirements.

### A. *Verification Requirement*

First, this Court has authority to review satisfaction of the verification requirement regardless of whether the taxpayer raised that issue at the CDP hearing. *See Hoyle v. Commissioner*, 131 T.C. 197, 202–03 (2008), *supplemented by* 136 T.C. 463 (2011). Section 6330(c)(1) requires the Appeals officer, as part of his review of a proposed action to collect TFRPs, to verify that a Letter 1153 was issued to the taxpayer. *See Lee v. Commissioner*, 144 T.C. 40, 49–50 (2015). On remand, SO Megyesi verified that the written approval requirement under section 6751(b) had been met. *See Chadwick*, 154 T.C. at 94 (holding that TFRPs are penalties subject to the written supervisory approval requirement for assessment).

SO Megyesi also verified that Mr. Crawford had been mailed the Letter 1153 before the assessment of the TFRP. Section 6330 does not require that the Appeals officer rely upon any particular document to verify that all applicable laws and administrative procedures were followed. *Craig v. Commissioner*, 119 T.C. 252, 262 (2002). The Supplemental Administrative Record reflects that SO Megyesi reviewed the documents in the case file, including Letter 1153 and USPS Form 3800, and determined that Letter 1153 was properly sent to Mr. Crawford's last known address by certified mail. Moreover, as previously noted, there is no evidence that it was not received by Mr. Crawford. We conclude that SO Megyesi verified that all requirements of applicable law and administrative procedure were met.

### B. *Issues Mr. Crawford Raised*

#### 1. *OIC*

During his initial CDP hearing Mr. Crawford submitted an OIC of $100 to resolve his unpaid tax liability. The Commissioner is authorized to compromise an outstanding tax liability on multiple grounds, including doubt as to collectibility. *See* § 7122(a); Treas. Reg. § 301.7122-1(b). Mr. Crawford's OIC was based on doubt as to

[*12] collectibility and his contention that he is "unable to pay these taxes instantly without inflicting undue hardship upon [himself] and other innocent parties." Mr. Crawford contends that his OIC should have been accepted because he was reinvesting roughly half of his $208,000 2021 Form W–2 income into Crawford Pile Driving thus lowering his RCP.

Doubt as to collectibility exists in any case where the taxpayer's assets and income are less than the full amount of the liability. Treas. Reg. § 301.7122-1(b)(2). "[A]n offer to compromise based on doubt as to collectibility will be accept[ed] only if the offer reflects the [RCP] of the case (i.e., that amount, less than the full liability, that the IRS could collect through means such as administrative and judicial collection remedies)." *Murphy*, 125 T.C. at 309. The Commissioner may reject an OIC when the taxpayer's RCP exceeds the amount he proposes to pay. *See Johnson v. Commissioner*, 136 T.C. 475, 486 (2011), *aff'd*, 502 F. App'x 1 (D.C. Cir. 2013).

The Commissioner has wide discretion to accept compromise offers and to prescribe guidelines "to determine whether an offer-in-compromise is adequate and should be accepted." § 7122(d)(1). In reviewing an SO's determination, we do not decide for ourselves what would be an acceptable collection alternative. *See Thompson v. Commissioner*, 140 T.C. 173, 179 (2013); *Murphy*, 125 T.C. at 320; *Randall v. Commissioner*, T.C. Memo. 2018-123, at *9 ("We . . . do not recalculate a different amount for an acceptable installment agreement or OIC."). Our review instead is limited to determining whether the SO abused his discretion—that is, whether his decision to reject Mr. Crawford's OIC was arbitrary, capricious, or without sound basis in fact or law. *See Thompson*, 140 T.C. at 179; *Murphy*, 125 T.C. at 320.

Generally, an Appeals officer is directed to reject any offer substantially below the taxpayer's RCP, unless special circumstances justify acceptance of such an offer. *See Mack v. Commissioner*, T.C. Memo. 2018-54, at *10 (first citing Rev. Proc. 2003-71, § 4.02(2), 2003-2 C.B. 517, 517; and then citing *Johnson*, 136 T.C. at 485–86); *see also* Internal Revenue Manual (IRM) 5.8.4.3 (Sept. 24, 2020). An SO does not abuse his discretion when he adheres to published IRM collection guidelines. *See Eichler v. Commissioner*, 143 T.C. 30, 39 (2014); *Orum v. Commissioner*, 123 T.C. 1, 13 (2004), *aff'd*, 412 F.3d 819 (7th Cir. 2005).

**[\*13]** For SO Megyesi to conclude that Mr. Crawford's OIC should be rejected, he needed to find only that Mr. Crawford's RCP exceeded $100 (i.e., the amount Mr. Crawford proposed to pay under his OIC). The IRS initially determined that Mr. Crawford's RCP was $1,003,664. Over the course of the CDP hearing, Mr. Crawford continued to maintain that his income was below the $208,000 reported on his 2021 Form W–2. Upon further review SO Megyesi determined that Mr. Crawford's annual income for purposes of the OIC was $135,420 (or monthly income of $11,285). SO Megyesi then recalculated Mr. Crawford's RCP using this reduced amount of income and determined that Mr. Crawford's RCP was $568,280, an amount still vastly higher than his OIC of $100. Mr. Crawford had multiple opportunities to submit additional documentation demonstrating a lower RCP, but he repeatedly supplied incomplete or unreliable records. SO Megyesi considered all information that Mr. Crawford submitted and properly concluded that Mr. Crawford did not qualify for an OIC. Therefore, we conclude that SO Megyesi's decision to reject Mr. Crawford's OIC was not arbitrary, capricious, or without sound basis in fact or law.

## 2. *Installment Agreement*

Although Mr. Crawford indicated on his CDP Hearing Request Form that he was interested in pursuing an installment agreement, he did not propose any collection alternatives other than an OIC. "There can be no abuse of discretion for failure to consider an installment agreement that was never proposed." *Gentile v. Commissioner*, T.C. Memo. 2013-175, at \*9, *aff'd*, 592 F. App'x 824 (11th Cir. 2014). Considering the foregoing, we hold that the SOs did not abuse their discretion in determining that Mr. Crawford was ineligible for any other collection alternatives.

## C. *Balancing Obligations*

Mr. Crawford did not allege in his Petition that the SOs failed to consider "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary." §§ 6320(c), 6330(c)(3)(C). Because Mr. Crawford did not challenge the SOs' conclusions, he has conceded this issue. *See* Rules 331(b)(4), 121(d); *see also CreditGuard of Am., Inc. v. Commissioner*, 149 T.C. 370, 379 (2017). Nonetheless, we are satisfied that the SOs properly considered the balancing obligations and did not abuse their discretion in

**[\*14]** sustaining the Lien Notice. Furthermore, on our review of the record, we find no basis for disturbing the SOs' conclusions.

IV.    *Conclusion*

Accordingly, there are no disputes of material fact, and judgment may be rendered as a matter of law. Finding no abuse of discretion, we will grant the Commissioner's Motion affirming the Appeals Office's determination to sustain the issue of the Lien Notice.

We have considered all arguments made by the parties and, to the extent they are not addressed herein, deem them to be moot, irrelevant, or without merit.

To reflect the foregoing,

*An appropriate decision will be entered.*